**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| **JARED LEE, DANA ELLIS,** | § | |
| **MATTHEW COUNTS,** | § | |
| **GREGORY MCCLENDON, and** | § | |
| **BARRY RUSSELL,** | § | |
| | § | **Civil Action No. 7:22-cv-185** |
| **Plaintiffs,** | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **CITY OF MIDLAND, JENNIE** | § | |
| **ALONZO, ROSEMARY SHARP, and** | § | |
| **CAMILO FONSECA** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Jared Lee, Dana Ellis, Matthew Counts, Gregory McClendon, and Barry Russell (collectively, the "Plaintiffs"), by and through counsel, hereby file this civil rights action against the City of Midland, Jennie Alonzo, *individually*, Rosemary Sharp, *individually,* and Camilo Fonseca, *individually,* for Defendants' violations of the United States Constitution, the laws of the United States, and various Texas state laws and would show the Court as follows:

## INTRODUCTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and related state law claims. The Plaintiffs, the "Midland Christian Five," are five career educators who responded reasonably, appropriately, and with integrity to a locker room incident involving horseplay among members of Midland Christian School's high school baseball team. The Defendants are law enforcement authorities who—in a remarkable abuse of power—arrested these educators as retaliation for the educators asserting their Constitutional rights while complying with their

professional duties and federal law. To make these false arrests, the Defendants lied and omitted material facts about the Midland Christian Five's actions in sworn affidavits.

2.    The fallout from the Defendants' illegal and unconstitutional actions has forever changed the lives of the Midland Christian Five. Their images were plastered on worldwide media and associated with the false allegations of the most vile and callous nature. Ultimately, the criminal justice system vindicated the Five when a grand jury found what the investigating officers had known all along: no probable cause of a crime existed.

3.    The Midland Christian Five now bring this case to hold the government officials who violated their rights, and the governments who enabled them, accountable and to prove—once and for all in the eyes of the public and the law—that the Five did nothing wrong.

* * * *

4.    The facts giving rise to this case began in a baseball locker room. In an incident of horseplay, a sophomore player poked a freshman on his buttocks—over the clothes—with a bat. Plaintiff Ellis (the secondary school principal) heard a rumor about the incident two days after it occurred. As discussed below, Ellis heard about the incident through a hearsay account from a person, who heard from a parent, who had heard from her freshman daughter, who heard a rumor.

5.    Upon learning of the rumor, Plaintiff Ellis immediately requested that Plaintiff McClendon (the athletic director) investigate and identify the students involved. Plaintiff McClendon, with the assistance of Plaintiff Counts (the assistant principal), interviewed several baseball players, including the sophomore and the freshman. After having multiple discussions with players present during the incident, including the freshman "victim"—who denied that any type of sexual assault occurred—the Plaintiffs determined that the boys had been engaged in locker room horseplay.

6.      Indeed, at no time did any school official have reasonable cause to believe the freshman had been sexually assaulted. To the contrary, in speaking with those involved, no evidence whatsoever emerged of a sexual assault. And despite some hearsay characterizations of a poking "in the butt," the alleged victim himself repeatedly confirmed that the entire incident "wasn't a big deal"—that it was nothing more than locker room roughhousing—and that no penetration occurred. Accounts from those involved made clear that the freshman had simply been poked on the fully clothed buttocks with a bat—the same version of events that came from the freshman himself.

7.      Nonetheless, the alleged sophomore perpetrator was punished in accordance with school policy. The coaching staff also counseled all of the players that such conduct would not be tolerated in the future.

8.      Over a week after the incident, another student (who was not present when the incident occurred) allegedly overheard gossip about it during lunch. In a bizarre and unfortunate game of "telephone," a more extreme—and totally false—account of the incident emerged from this student's father. In this third- or fourth-hand hearsay account, instead of being "poked in the butt," the freshman's "anus was penetrated far up with a bat."

9.      This gossip was, by all accounts, totally false. No one—not the freshman or the sophomore involved, the other players present during the event, or the coaches who had supervised the practice preceding the event—ever reported penetration of any kind. In any event, the student's father then reported the unsubstantiated gossip—which grossly misrepresented what actually occurred—to the police.

10.      So began the Defendants' vindictive and malicious campaign to prosecute Plaintiffs based upon the unsupported rumor. It quickly became obvious that Defendants, led by Alonzo,

were offended—indeed, outraged—that Plaintiffs dared to investigate an unsubstantiated rumor at the school level before involving law enforcement. And Defendant Alonzo frankly expressed her outrage during a break in an interview of Plaintiff Ellis, saying "I'm pissed. I'm fucking pissed. I'm so mad."

11.     Blinded by this unjustified anger, Defendant Alonzo spearheaded a tunnel-visioned and biased "investigation" into the incident. Among other things, she intentionally excluded from consideration (and, ultimately, from sworn warrants and criminal complaints) the overwhelming facts supporting Plaintiffs' reasonable—and correct—belief that no reportable abuse occurred. Indeed, though Plaintiffs fully cooperated with Defendant Alonzo's malicious investigation, she took offense at Plaintiff Lee's request—made at the direction of Midland Christian School Board President Jason Stockstill—for a search warrant before disclosing documents containing sensitive student information. This request was, of course, in compliance with—if not required by—the Family Educational Rights and Privacy Act (FERPA).

12.     In fact, when explaining the need for a warrant, Plaintiff Lee informed Defendant Alonzo that, while he wanted to comply, the school's FERPA obligations required a warrant. Nonetheless, Defendant Alonzo still took offense at Plaintiffs' assertion of their constitutional rights and their protection of student privacy—resentments that Alonzo would never relinquish.

13.     In an extreme and unreasonable abuse of power, Defendant Alonzo—supported by the other defendants—maliciously pursued and obtained false arrest warrants against Plaintiffs for failing to report child abuse. Significantly, to secure Plaintiffs' arrests, Defendant Alonzo wrote arrest warrant affidavits that contained deliberate—or, alternatively, reckless—falsehoods and omissions. These false statements were calculated to mislead the Justice of the Peace who issued the warrants.

4

14.     Even more egregiously, Defendant Alonzo charged Plaintiffs with the felony of not only failing to report, but intentionally concealing abuse. Without the concealment allegation, the failure to report charges would have been misdemeanors and would have thereby created heightened scrutiny of Defendant Alonzo's choreographed perp walk that Defendant Alonzo premeditated to publicly humiliate and stigmatize the career educators.

15.     Using the fraudulently obtained warrants, Defendant Alonzo, along with several other MPD officers, arrested Plaintiffs on the school campus, intentionally making a spectacle in front of their students, colleagues, and the parents of their students. The Midland Christian Five were also intentionally paraded in front of the media that was present, in accordance with Defendant Alonzo's premeditated plan. Indeed, shortly after the arrests, footage of the arrests appeared on local news outlets and quickly spread around the world.

16.     After spending hours in jail for these baseless arrests, the Five were each released on bond. Nearly three months later, a grand jury no-billed every case against the Midland Christian Five, and the district attorney dismissed the unfounded charges.

17.     Despite their eventual exoneration, however, the false and malicious allegations against these career educators have profoundly disrupted their lives, irreversibly damaged their reputations, and caused severe and ongoing emotional distress and trauma. To clear their names once and for all, the Midland Christian Five file suit against Defendants' flagrant abuse of power.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the related Texas state law claims. Venue is proper in the Western District of Texas, Midland-Odessa Division, as it is the district in which the defendants

are located and in which the events giving rise to this action occurred in accordance with 28 U.S.C. § 1391(b).

## PARTIES

19.     Plaintiff Jared Lee is a resident of Midland County, Texas. He was the superintendent of Midland Christian School, a position he held for four years. The 2021-2022 school year was his thirteenth year on the faculty of the school, and his nineteenth year in education. Plaintiff Lee previously served Midland Christian School as a teacher, junior high school principal, and academic dean. Plaintiff Lee attended the school as a child while his father was a principal who later became superintendent. His mother was a teacher at Midland Christian School before later serving as its development director. Plaintiff Lee graduated from the school in 1999. His two daughters are currently students at the school.

20.     Plaintiff Dana Ellis is a resident of Midland County, Texas. She was the principal of the secondary school at Midland Christian School, a position she held for two years. The 2021-2022 school year was Plaintiff Ellis's sixth year on the faculty, having previously served as middle school principal and an elementary school teacher. She has been in education for twelve years. Plaintiff Ellis graduated from Midland Christian School in 1998, and she has four children who are currently attending the school.

21.     Plaintiff Matthew Counts is a resident of Midland County, Texas. At the relevant time, he was the assistant principal of the secondary school and a football coach at Midland Christian School. The 2021-2022 school year was Plaintiff Counts's fifth year on the faculty at the school, having spent the previous years as a teacher and coach. He attended Midland Christian School throughout high school and played football. Plaintiff Counts graduated from Midland Christian School in 2013.

22.     Plaintiff Gregory McClendon is a resident of Midland County, Texas. He is the former athletic director and head football coach at Midland Christian School, a position he held for over twenty years. Plaintiff McClendon's son was a quarterback for the Midland Christian School football team and won three state championships with the team with his father as coach.

23.     Plaintiff Barry Russell is a resident of Midland County, Texas. He was the head baseball coach at Midland Christian School during the relevant time period. Plaintiff Russell has received numerous honors over the years, including the following awards:  National Sunbelt Class Hall of Fame Coach, Texas Sports Writers Association Coach of the Year, National Federation of State High School Association Coach of the Year, Midland Independent School District Hero for Kids Award, American Baseball Coaches Association Regional Coach of the Year for High School Division II, and Texas High School Baseball Association All Star Coach. Plaintiff Russell has also served as President of the Texas High School Baseball Coaches Association. He has been in education for thirty-four years, and he served as the head baseball coach for Midland High School for twenty-two years.

24.     Defendant City of Midland is a municipal corporation organized under the Constitution and laws of the State of Texas and located within the Western District of Texas, Midland-Odessa Division. The Midland Police Department ("MPD") is a department operated by the City of Midland. MPD sets policy for its police officers. Defendant City of Midland may be served by serving the City Secretary at P.O. Box 1152, Midland, Texas 79702 or in any other manner permitted by law.

25.     Defendant Jennie Alonzo is employed by the City of Midland as an MPD detective who, at all times relevant to this action, was acting under the color of law and within the scope of her employment. Defendant Alonzo is sued in her individual capacity.

26.    Defendant Rosemary Sharp is employed by the City of Midland as an MPD sergeant who, at all times relevant to this action, was acting under the color of law and within the scope of her employment. Defendant Sharp is sued in her individual capacity.

27.    Defendant Camilo Fonseca is employed by the City of Midland as an MPD officer who, at all times relevant to this action, was acting under the color of law and within the scope of his employment. Defendant Fonseca is sued in his individual capacity.

## FACTS

28.    The Midland Christian Five were maliciously prosecuted and falsely arrested by Defendants for purportedly failing to report child abuse and acting with the intent to conceal such alleged abuse. As a consequence of these false arrests, the Five spent hours in jail, underwent excruciating public humiliation, and experienced severe reputational damage both personally and professionally, and particularly to their careers in education. They were immediately placed on administrative leave by Midland Christian School pending the outcome of their criminal cases. Plaintiffs Lee, Ellis, McClendon, and Russell never returned in any official capacity nor do they currently work in the education field. Plaintiff Counts was demoted from his role as assistant principal.

29.    The facts common to all of the Midland Christian Five's claims are recited below.

➢ **Midland Christian School Administrators Hear a Rumor About the Baseball Team.**

30.    News of the locker room incident that led to this case first reached a member of the Midland Christian School administration late in the evening on Thursday, January 20, 2022. The news came not from an outcry by any victim—but instead through a chain of hearsay. Specifically, a sixth-grade teacher at Midland Christian School, received a text message from a ninth-grade parent indicating that the ninth-grade parent's daughter had told the ninth-grade parent that a

freshman involved in a locker room incident had been severely injured, requiring him to miss school. The chain of hearsay was as follows:

**Chain of Hearsay from Initial Report**



31.     The rumor provided no information as to the identity of the alleged perpetrator—or for that matter, the ninth-grade girl reporting it. Nonetheless, through conversation with the sixth-grade teacher, Plaintiff Ellis learned that it was further rumored that the alleged victim had not returned to school since the incident because of injuries allegedly sustained.

32.     Plaintiff Ellis easily determined, however, that the alleged victim had not missed a day of school. Plaintiff Ellis decided to further investigate the rumor because, among other things: (1) the rumor was fourth-hand hearsay that originated from a ninth-grade female student who was not on the baseball team or a witness to the alleged conduct; (2) the rumor did not provide the identity of the perpetrator; and (3) there was an immediately apparent falsehood (*i.e.* that the alleged victim involved had missed school) in the hearsay account.

33.    The very next morning—less than twelve hours after first learning of the incident and before the start of the school day—Plaintiff Ellis requested that Plaintiff McClendon investigate. Plaintiff McClendon asked Plaintiff Counts to assist. Plaintiff Ellis also informed Plaintiff Lee (the superintendent) of the investigation. Plaintiff Ellis did not participate in the initial investigation because her son was on the baseball team.

> **Student Witnesses Explain What Actually Occurred—Horseplay Involving a Bat.**

34.    Plaintiffs McClendon and Counts spoke with several baseball players about the rumor, including most importantly, the freshman "victim" himself. These players consistently reported that the freshman had been placed on the ground by one other sophomore baseball player. With the freshman player in his baseball clothes (including baseball pants and sliding shorts) fully fastened and on the entire time, the sophomore poked the freshman on his bottom with a bat one time. Everyone, including the freshman stated that the incident was "not a big deal." The freshman was asked if the bat somehow penetrated his "butt hole." He repeatedly denied that this had occurred.

35.    The investigation continued on Monday, January 24, which happened to be the first day head baseball coach Plaintiff Russell returned to school after nearly two weeks of sick leave due to a severe COVID-19 infection (that at one point sent him to the emergency room). Plaintiff Counts asked Plaintiff Russell to assist in the continued investigation. Plaintiff Russell saw the freshman alleged victim in the hallway and asked if he was okay. The freshman informed Plaintiff Russell that the sophomore player had tapped him on the behind with the bat. The freshman again said that he was fully clothed, was not hurt, and that there was no penetration.

36.    Plaintiff Russell held a meeting with the baseball team and told the team that the administration needed to determine who had poked the freshman with a bat. Later that day, the

sophomore boy approached Plaintiff Counts, and later Plaintiff Russell, and admitted that he was the one who had poked the freshman with a bat. Again, the sophomore stated that the bat did not penetrate the freshman's anus.

37.    To discipline the sophomore player, Plaintiffs Lee, Ellis, and Counts imposed the school's highest punishment short of expulsion.

> **A Parent Reports an Inaccurate, Exaggerated Rumor to Police.**

38.    On Thursday, January 27—a week after Plaintiff Ellis was first notified of the rumor and days after Plaintiffs' investigation had concluded—the parent of a freshman baseball player, who was not present the day of the alleged incident, began sending a series of emails. That parent, Matthew Friez, had a lengthy history, dating back six years, of emailing Plaintiff Lee and the Midland Christian School administration with a litany of complaints. Friez was in a state of perpetual dissatisfaction with the Midland Christian School administration. Friez reported that his non-witness son told him that the bat had penetrated the freshman's anus. Friez, therefore, concluded that the incident was a sexual assault—based not on any facts, but upon multiple levels of inaccurate hearsay.

39.    Plaintiff Lee informed Friez that the incident had been handled appropriately and that Friez's account was completely inconsistent with what had occurred. Nonetheless, Plaintiff Lee also encouraged Friez to report the incident to the authorities if he believed it appropriate. Plaintiff Lee wrote to Friez, "You have every right to contact the authorities[,]" and "You are welcome to make a report based upon your son's perception and information he gave to you, but I can tell you that after many interviews with the players involved, there has been no evidence of a sexual assault."

> ### **The Plaintiffs Attempt to Comply with the Police Investigation.**

40.     On Friday, January 28, Matthew Friez contacted the Midland Police Department and reported his son's hearsay account of the incident. Defendant Fonseca and another uniformed officer visited Midland Christian School and interviewed Plaintiff Lee. This interview was recorded by Defendant Fonseca's body camera. Despite video evidence to the contrary, Defendant Fonseca—according to Detective Alonzo's warrant affidavits—would later report that "Lee stated that [the administration's] investigation found the baseball bat did in fact touch [the freshman's] anus but did not go inside."

41.     But not only did the school's investigation make no such finding, Plaintiff Lee made no such statement. Indeed, Plaintiff Lee never used the word "anus" in describing what he believed occurred—though he quoted Matthew Friez's use of this word. Nor did he suggest that contact with the student's anus—by any name—had occurred. Instead, Plaintiff Lee stated that a bat was "pushed around [the student's] bottom." Significantly, Plaintiff Lee informed Defendant Fonseca that, after interviewing those involved with the incident, the administration found no evidence that the bat penetrated anyone's anus.

42.     On that same day, Defendant Fonseca spoke with the freshman's mother who was aware of the incident but was very surprised when Defendant Fonseca told her Matthew Friez's account of it. The freshman's mother was also a teacher (with the same reporting obligations as the Midland Christian Five), and she explained that she learned about the incident shortly after it happened. She told Defendant Fonseca that her son's behavior did not change after the incident and that she did not believe a bat penetrated her son's anus. Defendant Fonseca also admitted to the freshman's mother that the principal (Plaintiff Ellis) was not told about any alleged penetration.

43.     Following the initial interviews by Defendant Fonseca, there were two full weeks of apparent inaction by Defendants with regard to their investigation of the incident. Two weeks later, on Friday, February 11, law enforcement finally spoke directly with the alleged freshman victim. On that same day, the freshman underwent a sexual assault nurse examiner ("SANE") exam. The exam indicated there was no injury and that no trauma was observed.

44.     Also on the same day, the Defendants arrested the sophomore player who had admitted to poking the freshman. This arrest was made at Midland Christian School. At the time of the sophomore's arrest, Defendant Alonzo ordered Plaintiff Ellis to not contact the boy's parents about the arrest. Defendant Alonzo remarked to Defendant Sharp that if anyone called the sophomore's parents, they too would be arrested—adding "I don't give a fuck."

45.     Defendant Alonzo initially insisted upon perp walking the boy through the front doors of the school where his arrest would be more visible—despite several school officials requesting that he be escorted through the back doors. Only when Defendants Alonzo and Sharp received a phone call from a sergeant making the same request on behalf of the school did Defendant Alonzo reluctantly acquiesce.

46.     Nonetheless, Defendant Alonzo remarked during this arrest that "it's good to know where to park." In making this comment, Defendant Alonzo revealed her premeditated plan to park at the front of the school again during her future arrests of Plaintiffs so that their arrests could be as visible and as humiliating as possible.

47.     Before leaving the school, Defendant Alonzo asked Plaintiff Ellis for the documentation of the administration's investigation into the alleged incident. Plaintiff Ellis informed Defendant Alonzo that Plaintiff Lee was in possession of those documents and that

Plaintiff Lee was not on campus. Defendant Alonzo ordered Plaintiff Ellis to instruct Plaintiff Lee to produce the documentation to her by noon the following Monday.

48.     On Monday, February 14, Plaintiff Lee contacted Defendant Alonzo. During that call, Plaintiff Lee expressed his desire and willingness to comply with Defendant Alonzo's investigation but requested that she obtain a warrant to ensure that the school was in compliance with FERPA—a federal law protecting private information about students. Plaintiff Lee made this request after being instructed to do so by the School Board President Jason Stockstill. Defendant Alonzo responded angrily and stated, "We are going to get a warrant and get everyone's computer!"

➢ **The Defendants Search the School.**

49.     That afternoon, Defendant Alonzo returned to the school with not only a search warrant, but also several police vehicles and a crime scene investigation van. As in the case of the criminal complaints and arrest warrants that would come later, the affidavit supporting this search warrant contained material misrepresentations and omissions.

50.     Relying upon her falsely obtained warrant, Defendant Alonzo swarmed the school's front office with several armed police officers who proceeded to search Plaintiffs' offices and computers. The officers also took photographs of all the offices within the main office, including photographs of several staff members entirely unrelated to the investigation.

51.     Defendant Alonzo then conducted voluntary interviews of Plaintiffs McClendon, Ellis, Counts, and Lee. These interviews were audio recorded. The statements in those interviews were consistent with their belief that, prior to Friday, January 28, there was no evidence that a bat had contacted or penetrated a student's anus or that any form of a sexual assault had occurred.

Plaintiff Russell was not present on campus to be interviewed. However, he contacted Defendant Alonzo, as instructed, to schedule his voluntary interview for a later date.

> **Through Lies and Omissions, Defendants Obtain Warrants and Falsely Arrest the Midland Christian Five in a Manner Deliberately Calculated for Maximum Humiliation.**

52.     Two days later, on Wednesday, February 16, Defendant Alonzo, supported by Defendants Sharp and Fonseca, signed arrest warrant affidavits that led to the malicious prosecution and false arrests of Plaintiffs for felony failure to report child abuse with the intent to conceal. Defendants executed the arrest warrants at Midland Christian School and purposefully walked the Midland Christian Five through the front doors in handcuffs to create a public spectacle and lasting humiliation. The Five requested the opportunity to turn themselves in at the police station but were denied. And there is no indication that summonses were ever considered. Instead, it was clear that Defendants' goal was to publicly humiliate the Midland Christian Five and to create the enduring stigma that the Five would inevitably experience as a result of their public arrests.

53.     Significantly, the Defendants "perp walked" the Midland Christian Five right past the media that was present—apparently in accordance with Defendant Alonzo's premeditated plan. The arrests received worldwide media attention ranging from the local news to coverage by the British Broadcasting Corporation (BBC) and Newsweek. News of the Five's arrests was also circulated across social media outlets such as Reddit and Tik Tok.

54.     Following their arrests, the Midland Christian Five remained in police custody for several hours before being released on bonds that evening. Three months later, a grand jury no-billed the charges.

> **The Defendants Obtain Unconstitutional Warrant Affidavits.**

55.     Defendant Alonzo wrote and swore to false allegations, in nearly identical (and unconstitutional) form arrest warrant affidavits, which resulted in the malicious prosecution and false arrests of the Midland Christian Five. Defendants Sharp and Fonseca assisted in the preparation of those warrant affidavits and knowingly provided false information that was included therein. The arrest warrant affidavits contained deliberate and reckless falsehoods, misstatements, and omissions that were material and necessary to a finding of probable cause.

56.     Egregiously, to obtain felony warrants, Defendant Alonzo—with the support, assistance, and approval of Defendants Sharp and Fonseca—made the false allegation of concealment. The concealment element was vital and material to the felony charges. Without it, the failure to report charges would have been misdemeanors. And without felony charges, Defendant Alonzo's choreographed public display in arresting Plaintiffs at the school would have drawn heightened scrutiny—and likely would not have occurred at all. Thus, the concealment element was critical to Defendants' premeditated plans. And it was an allegation that was created completely out of whole cloth.

57.     Defendant Alonzo's affidavits created the overall false impression that on or about Thursday, January 20, 2022—two days after the locker room incident occurred—the Midland Christian Five were aware that a student had been sexually assaulted.[1] Specifically, Defendant

---

[1] Significantly, despite the global nature of the overarching allegations in the arrest warrant affidavits, Defendant Alonzo was aware that Plaintiff Russell was absent from school due to a COVID infection on Tuesday, January 18—the day the alleged incident occurred. Plaintiff Russell did not return to school until the following Monday, January 24. So Plaintiff Russell could not have failed to report abuse on January 20. The arrest warrant affidavits acknowledge that Plaintiff Ellis notified Plaintiff Lee of the rumor on January 21 and that Plaintiffs McClendon and Counts were notified as well. However, the affidavits are silent as to when Plaintiff Russell was notified.

Alonzo stated—ignoring directly controverting evidence—that the Five "knew of [an] incident on January 20, 2022, that one of the baseball players had a baseball bat shoved into his anus."

58.     Defendant Alonzo further created the patently false impression that the alleged penetration was reported by a credible and knowledgeable complainant (instead the report was hearsay upon hearsay), and that the allegation was uncontroverted (in fact, it was not only controverted, but contrary to the accounts of everyone involved). Defendant Alonzo also falsely stated that Plaintiff Lee was unwilling to provide documentation of the school's internal investigation—omitting that he was simply trying to comply with federal privacy law. Defendant Alonzo also falsely insinuated that *all* of the Five were intending to conceal the incident of abuse from authorities when there was no evidence that *any of them*—particularly Barry Russell who had been out sick—were intending to do so.

59.     Defendant Alonzo further materially misstated and omitted **the details of how the incident was first reported to the administration.** The report was made through a chain of hearsay: from an unknown person to a female student to a parent to a teacher and then to Plaintiff Ellis. Defendant Alonzo further materially misstated and omitted **the details of how MPD was notified of a rumor of alleged penetration of the student's anus**, over a week after the incident had occurred. Defendant Alonzo did not make clear that the incident was not reported directly from a participant to MPD, but instead through unreliable hearsay from a perpetually disgruntled parent whose child was neither a victim nor a witness to the incident.

60.     Defendant Alonzo also omitted that this disgruntled parent's belated report was made to MPD just one day after he communicated the unfounded allegations to administrators. And the affidavits omitted that, by the time a parent reported the rumor to the police, the Five had

already investigated and spoken directly with the students actually involved, among other sources of information, to conclude that only a single poke on a student's fully-clothed buttocks occurred.

61.     Defendant Alonzo additionally omitted that the disgruntled parent who reported that rumor refused to allow any administrator to speak with his son about the new—and incorrect—version of the rumor. Instead of the delayed report making it clear that a sexual assault occurred, these facts supported the reasonable position at that time that the recently concluded investigation had correctly assessed the situation. Defendant Alonzo was aware of the details of this belated report as they are referenced in her own investigative report.

62.     Defendant Alonzo further materially misstated and omitted **the details of the school's compliance with her investigation, the seriousness with which Plaintiffs handled the incident, and Plaintiff Lee's repeated encouragement to the disgruntled parent to report his belief of abuse to police.** Defendant Alonzo stated in her affidavits that Plaintiff Lee would not provide documentation of the administration's investigation and would not answer questions during a phone call. But Defendant Alonzo omitted that when she asked for any and all records pertaining to the investigation, Plaintiff Lee informed her that he wanted to comply, but would first need a search warrant in order to meet his obligations under FERPA.

63.     Defendant Alonzo also omitted that Plaintiffs Ellis, Counts, McClendon, and Russell took no part in discussions with Defendant Alonzo about whether the private internal investigation documents would be disclosed without the service of legal process. Defendant Alonzo further failed to state that, once she obtained a search warrant, all of the records were disclosed to her without incident and that each Plaintiff, with the exception of Plaintiff Russell, voluntarily submitted to an interview with her. Plaintiff Russell was unable to be interviewed because he was not present at the school during Defendant Alonzo's visit. He, nonetheless, called

Defendant Alonzo to arrange to meet with her, ultimately scheduling a meeting with her for February 16.

64.    Defendant Alonzo also omitted that Plaintiffs instituted the highest punishment short of expulsion that the school allows to the alleged perpetrator. And Defendant Alonzo did not include in her affidavits Plaintiff Lee's repeated encouragement to the disgruntled parent that he had "every right to contact the authorities" and that he was "welcome to make a report based upon [his] son's perception[.]" Defendant Alonzo was aware of all of these details as they are referenced in her own investigative report, but she intentionally and maliciously—or at least recklessly— omitted them in her affidavits.

65.    Defendant Alonzo further **interchanged, throughout her affidavits, the terms "butt" and "anus," recklessly creating the misconception that Plaintiffs believed the bat penetrated the alleged victim's anus**. That was not the case. Defendant Alonzo was fully aware that the Midland Christian Five did not believe the bat contacted the student's anus, as this was documented in their investigative notes, their voluntary interviews with police, Defendant Alonzo's investigative report, and other contemporaneous recordings.

66.    Finally, Defendant Alonzo materially omitted from her affidavits **facts that would have placed the locker room incident in its proper context.** She failed to include that the alleged victim's behavior did not change following the incident—one fact, among many, that weighed against a finding that there was reportable abuse under Texas Family Code §§ 261.001 and 261.101. Defendant Alonzo further omitted that the alleged victim and perpetrator remained friends and in good graces, and that the alleged victim felt safe at school—and, apparently, at baseball practice—following the incident. Defendant Alonzo also failed to mention that the alleged

victim underwent a SANE exam, and that during that exam, it was determined that he had no injury and that no trauma was observed.

67.     Instead, the only mention of a SANE exam in the affidavits indicates that a SANE exam was not conducted immediately after the incident—recklessly creating the false impression that no SANE exam was ever conducted. In reality, a SANE exam was conducted five days prior to the date the affidavits were written, which was ironically, two weeks after law enforcement became involved. Defendant Alonzo was fully aware of the facts that she omitted as they were discovered during MPD's investigation.

68.     A non-exhaustive list of the material falsehoods and omissions from the affidavits are included herein.

| | **The Arrest Warrant Affidavits** | **The Truth** |
|---|---|---|
| **1.** | "I was notified in reference to a possible sexual assault of a child that . . . was reported to have occurred on or about Thursday, January 20, 2022." | A perpetually disgruntled parent of a student who was not present at baseball practice on the day of the alleged incident and was, therefore, a non-witness, informed Defendants of his belief that a bat had penetrated a baseball player's anus. The alleged incident had occurred on Tuesday, January 18 and Friez made his report ten days later—well after Plaintiffs had already completed an investigation.[2] |

---

[2] "In *Franks* [*v. Delaware*, 438 U.S. 154 (1978)], the Supreme Court observed that the warrant requirement is meant to allow the magistrate to make an independent evaluation of the matter. It requires affiants to set forth particular facts and circumstances underlying the existence of probable cause, including those that concern the reliability of the information and the credibility of the source to avoid deliberately or reckless false statements." *Deshotel v. CardCash Exch., Inc.*, No. 6:19-373, 2020 WL 2319300, at *8 (W.D. La. Apr. 2, 2020) (internal quotation marks omitted) (alterations included); *see also Franks v. Delaware*, 438 U.S. 154, 165 (1978) ("[T]he affidavit must recite . . . some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed was credible or his information reliable.") (internal quotation marks omitted) (alterations included).

|  | **The Arrest Warrant Affidavits** | **The Truth** |
|---|---|---|
| **2.** | "It was discovered that on Thursday, January 20, 2022, Ellis was notified in reference to a sexual assault that had occurred. Ellis stated that she knew . . . one of [the] baseball players had a baseball bat shoved into his anus." | Plaintiff Ellis was first notified of an incident through a chain of hearsay: a ninth-grade, female student told her parent who told a sixth-grade teacher who told Plaintiff Ellis that there was a rumor. Plaintiff Ellis was told it was an incident involving a bat during which the boy's pants were on the entire time and they were horseplaying. (Def. Alonzo's Report). Plaintiff Ellis heard something about a baseball bat and a rear but did not know any specifics. (Def. Alonzo's 2/14/22 Interview of Pl. Ellis). Plaintiff Ellis did not believe a sexual assault had occurred. |
| **3.** | "On January 21, 2022, Ellis notified Lee in reference to the student having a baseball bat shoved up his anus to which he was aware on that date." | Plaintiff Ellis notified Plaintiff Lee that an incident was rumored to have occurred during which the boy's pants were on the entire time and they were horseplaying. Plaintiff Ellis did not know any specifics. |
| **4.** | "At that time Lee directed [McClendon and Counts] to conduct an 'investigation' into the incident instead of notifying law enforcement or another state agency . . . " | The school administrators investigated because they did not have reliable information as to what occurred, nor did they know which students were involved. There was absolutely no evidence that the school administrators conducted an investigation in bad faith or with the goal of evading their requirement to report child abuse. And ultimately, Plaintiffs did not contact law enforcement because they did not believe a sexual assault occurred. |
| **5.** | "On February 14, 2022, I received a call from Lee who stated that he would not provide the documentation and refused to answer any questions during the call, he requested a search warrant." | On February 14, 2022, Lee offered his notes of the investigation and stated, "we want to comply and cooperate," but he first requested a search warrant to comply with FERPA. |
| **6.** | During a conversation with Officer Fonseca on January 28, 2022, "Lee stated that their investigation found the baseball bat did in fact touch [the freshman player's] anus but did not go inside." | Plaintiff Lee *never* stated that he believed the baseball bat touched an anus and made clear the alleged victim had never "outcried" or stated this occurred. (Def. Fonseca's Body Camera). |

|    | **The Arrest Warrant Affidavits** | **The Truth** |
|----|-----------------------------------|---------------|
| **7.** | OMITTED FACTS | Plaintiff Lee's investigative notes indicated his belief that a bat was pushed on the player's butt or that the player received a poke on his butt. Matthew Friez's hearsay account of the incident was not supported by the evidence collected. The administrators spoke with the freshman player at least twice on January 21 and both times he stated that his pants were on and that he was just poked on the butt. |
| **8.** | "During the course of the investigation, it was found that [Plaintiffs] had knowledge of the sexual assault on January 21, 2022[.]" | During the course of the investigation, it was found that Plaintiffs had knowledge of an incident in which a student was poked on the butt with a bat, while wearing sliding shorts and baseball pants. Plaintiffs had no reason to believe—and did not believe—a sexual assault had occurred. The freshman player himself, *inter alia*, twice stated on January 21 that the bat did not penetrate. |
| **9.** | OMITTED FACTS | Plaintiff Ellis was *not* told that the baseball bat penetrated. (And she *was* told that it had *not* penetrated.) |
| **10.** | "Instead of reporting the incident they have continually attempted to conceal the incident o[f] abuse from authorities." | On February 14, 2022, Lee offered his notes of investigation and stated that he wanted to comply, but he first requested a search warrant out of his concern that he needed to comply with FERPA.<br><br>Plaintiff Lee encouraged Friez to contact law enforcement if Friez believed a sexual assault occurred. Plaintiff Lee told Friez on February 10, 2022, in a meeting that Friez surreptitiously recorded (unbeknownst to Lee), that Friez was not wrong for talking to the police and that Friez had every right to talk to the police. On February 14, 2022, Plaintiff Lee voluntarily interviewed with Defendant Alonzo about the investigation. |

| | |
|---|---|
| [*Continued from previous page . . . .*]<br><br>"Instead of reporting the incident they have continually attempted to conceal the incident o[f] abuse from authorities." | Plaintiff Ellis told Defendant Alonzo that Plaintiff Lee had the notes of the investigation and that she herself did not participate in the investigation. And, on February 14, 2022, Plaintiff Ellis voluntarily interviewed with Defendant Alonzo about the investigation.<br><br>Plaintiff Counts provided notes of his investigation as requested. And on February 14, 2022, Plaintiff Counts voluntarily interviewed with Defendant Alonzo about the investigation.<br><br>Plaintiff McClendon provided notes of his investigation as requested. And on February 14, 2022, Plaintiff McClendon voluntarily interviewed with Defendant Alonzo about the investigation.<br><br>Plaintiff Russell was on sick leave with a severe COVID infection during the time of the alleged incident and during the time it was initially reported. Plaintiff Russell was not requested to provide any notes in reference to the investigation. Plaintiff Russell was not present at the school when Defendant Alonzo conducted the voluntary interviews of the other Plaintiffs. However, in the days following, Plaintiff Russell reached out to Defendant Alonzo to schedule his interview for Wednesday, February 16, 2022, at 3 p.m. Plaintiff Russell was arrested on February 16 before he had the opportunity to attend his interview.<br><br>Plaintiffs Ellis, Counts, McClendon, and Russell took no part in discussions with Defendant Alonzo about whether the private internal investigation documents would be disclosed without the service of legal process. |

| | **The Arrest Warrant Affidavits** | **The Truth** |
|---|---|---|
| **11.** | "The [Plaintiffs] conducted their own 'investigation' although they had knowledge of the sexual assault." | Plaintiffs conducted a reasonable and genuine investigation to determine what occurred and never received evidence of a sexual assault. Defendant Alonzo's derisive use of quotation marks in referring to Plaintiffs' investigation is indicative of her contempt for the school and its decision to make a reasonable inquiry into the rumor instead of mindlessly reporting a chain of false hearsay to authorities.<br><br>Plaintiff Lee believed that a bat pushed or poked the freshman's butt. The freshman himself at least repeatedly told administrators the bat did not penetrate. Plaintiffs never had knowledge of a sexual assault. |
| **12.** | "[In notes taken by Plaintiffs McClendon and Counts] there was documentation that describes [the freshman's] anus was touched with the baseball bat." | The notes from Plaintiff Counts indicated that the freshman stated the bat prodded him but did not penetrate. The sophomore who poked him with the bat stated the same.<br><br>The notes from Plaintiff McClendon indicated that the freshman was poked on the outside of his clothes with a bat and that the bat did not go inside his rectum or in any way penetrate.<br><br>There was absolutely no documentation from either Plaintiff that the freshman's anus was touched. |

|     | **The Arrest Warrant Affidavits** | **The Truth** |
| --- | --- | --- |
| **13.** | "None of the students were interviewed by a forensic interviewer. The victim did not have a forensic interview, nor did he have a SANE done at that time due to law enforcement not being notified of the incident." | Plaintiffs conducted interviews of several students, including those directly involved, and determined that the incident was a bat poking a student's fully-clothed buttocks. |
|     |     | Law enforcement was notified of the alleged incident on January 28, 2022, and yet no immediate forensic interview or SANE exam of the "victim" occurred. That interview and exam did not occur until Friday, February 11—two weeks after law enforcement itself became involved. |
|     |     | Nevertheless, a SANE exam was performed prior to the warrant affidavit, and it determined that there had been no injury or trauma—a material fact intentionally omitted from the affidavit. |
| **14.** | OMITTED FACTS | The freshman's behavior did not change following the incident. The freshman and his alleged assailant remained friends and in good graces, and the alleged victim felt safe at school (and, apparently, baseball practice) following the incident. |
| **15.** | "I was also given emails that contained communication between the initial complainant [and Plaintiffs that] made very clear that a sexual assault had occurred and the school had a duty to report." | The initial complainant to the police did not provide the initial report received by Plaintiffs. The complainant to the police, Matthew Friez, was the parent of a student who was not present at baseball practice on the day of the alleged incident and was a non-witness. Matthew Friez, therefore, had no direct knowledge of the alleged incident. The emails did not make very clear that a sexual assault had occurred. The emails instead made clear that Matthew Friez had heard an unsubstantiated, hearsay rumor that the Plaintiffs had already investigated. |

| | **The Arrest Warrant Affidavits** | **The Truth** |
|---|---|---|
| **16.** | "The complainant told the school administration if they did not report the incident, he would have to as a mandatory/professional reporter. There were multiple emails exchanged. Several of the administrators refused to report the incident as shown in emails when communicating and responding to the complainant." | By the time the rumor, and a more extreme version at that, reached Friez—well over a week after the alleged incident occurred—the school had already spoken with everyone who had firsthand knowledge of the incident. The administrators spoke with the freshman repeatedly, and he repeatedly stated that his pants were on and that he was just poked on the butt. The freshman also repeatedly stated that the bat did not penetrate. Plaintiff Lee informed Friez in the emails that the school had found no evidence of a bat penetrating the child's anus and that Friez's son's account of the alleged incident was not accurate. Nonetheless, Plaintiff Lee encouraged Friez to contact law enforcement if Friez believed a sexual assault occurred. |

69.     Defendants City of Midland and Sharp were aware of and thereby on notice of a repeated pattern of unconstitutional and unprofessional behavior on the part of Defendant Alonzo that resulted in unreliable and untrustworthy investigations and unreliable and untrustworthy sworn testimony before courts. Defendant Alonzo's unreliable investigations and testimony have been at the center of numerous criminal cases in Midland that ultimately were dismissed as unfounded and unsupported. These faulty criminal proceedings have wreaked havoc on the lives and constitutional rights of numerous members of the Midland community. The City of Midland approved of, was deliberately indifferent to, and/or turned a blind eye to Defendant Alonzo's misconduct. Defendants City of Midland and Sharp failed to adequately train and supervise Defendant Alonzo in conducting reliable and trustworthy investigations and in providing reliable and trustworthy testimony before judicial officers.

70.     Defendant Sharp not only observed the repeated conduct across numerous cases as Defendant Alonzo's direct supervisor, but Defendant Sharp also specifically approved of and helped to facilitate Defendant Alonzo's misconduct against Plaintiffs in this instance. Defendant Sharp participated in the investigation of the locker room incident at Midland Christian School. She was, therefore, aware that Plaintiffs genuinely had no cause to believe that reportable abuse occurred, and she was aware that Plaintiffs were earnestly cooperating with Defendants' investigation. And yet, Defendant Sharp gave approval for Defendant Alonzo to pursue felony failure to report with intent to conceal charges and arrests against Plaintiffs. Defendant Sharp further assisted Defendant Alonzo in preparing the arrest warrant affidavits, and she provided information that was included in those affidavits.

71.     Similarly, Defendant Fonseca was aware of and thereby on notice of a repeated pattern of unconstitutional and unprofessional behavior on the part of Defendant Alonzo. And Defendant Fonseca was aware that Plaintiffs genuinely had no cause to believe that reportable abuse had occurred. For example, Defendant Fonseca's notes, dated January 28, 2022, stated that Defendant Ellis had been told that the baseball bat did *not* penetrate.

72.     On January 28, 2022, Defendant Fonseca witnessed the alleged victim's own mother's shock when Defendant Fonseca informed her of the new, more extreme rumor that the baseball bat had penetrated her son's rectum. Defendant Fonseca was also very close to the investigation and was aware that the alleged victim's baseball pants and sliding shorts were on during the incident and that the alleged victim's behavior did not change following the incident. And yet, Defendant Fonseca assisted Defendant Alonzo in crafting materially false and misleading arrest warrant affidavits and in falsely arresting Plaintiffs. Moreover, Defendant Fonseca provided information that was included in the false and misleading warrant affidavits.

73.    Defendant City of Midland has maintained a policy, custom, and practice of substandard ethical training and supervision of officers in their investigative and testimonial functions. As part of that custom, Defendant Alonzo was not properly trained or supervised in conducting reliable and trustworthy investigations and providing reliable and trustworthy sworn testimony before courts. As a consequence, upon information and belief, Midland residents, including Plaintiffs, have been arrested and prosecuted without cause in violation of the Fourth Amendment and other constitutional rights.

## CAUSES OF ACTION

74.    Plaintiffs incorporate all preceding paragraphs by reference herein.

75.    Plaintiffs had the right under the Fourth Amendment to the United States Constitution to be secure in their persons, homes, and property against unreasonable seizure and to not have a warrant issued for their arrests without probable cause. The Fourteenth Amendment protects these rights against deprivation by state actors. The Fourteenth Amendment also protects against the deprivation of liberty without due process of law.

76.    Pursuant to 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom or usage of any State, subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the parties injured in an action for redress.

77.    Each Defendant is a "person" within the meaning of 42 U.S.C. § 1983.

78.    Each Defendant, jointly, severally, or both, deprived Plaintiffs of their rights under the Fourth Amendment as incorporated and applied to the states through the Fourteenth Amendment. Each Defendant also jointly, severally, or both, deprived Plaintiffs of due process in violation of the Fourteenth Amendment.

79.     The acts and omissions of each Defendant were a proximate cause and cause-in-fact of Plaintiffs' damages.

**Count 1        42 U.S.C. § 1983:  False Arrest in Violation of Fourth and Fourteenth Amendments**

80.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

81.     As described above, Defendants Alonzo, Sharp, and Fonseca, while acting under the color of law and within the scope of their employment, deprived Plaintiffs of their Fourth and Fourteenth Amendment rights.

82.     On February 16, 2022, while acting under color of Texas law, Defendant Alonzo deprived Plaintiffs or caused them to be deprived of their rights under the Fourth and Fourteenth Amendments by knowingly or recklessly preparing and swearing to arrest warrant affidavits that contained numerous materially false and misleading statements and omissions.

83.     Defendant Alonzo presented the arrest warrant affidavits to a Justice of the Peace for Precinct 2.

84.     Defendant Alonzo swore under oath to the truthfulness of the contents of those affidavits.

85.     In the absence of the materially false and misleading statements and omissions contained therein, the arrest warrants were not supported by probable cause. That is, the Justice of the Peace should not and would not have signed the arrest warrants but for Defendant Alonzo's multiple misrepresentations and omissions.

86.     Defendant Alonzo, together with Defendants Sharp and Fonseca, all acting under color of law, executed the arrest warrants at Midland Christian School in front of Plaintiffs' students, colleagues, parents of students, and the news media that was present in accordance with Defendant Alonzo's premeditated plan.

87.     Defendants Alonzo, Sharp, and Fonseca violated the Fourth and Fourteenth Amendments by arresting Plaintiffs without probable cause as the facts within their knowledge were not reasonably sufficient to support the belief that Plaintiffs had committed an offense. No reasonable officer would have concluded that the facts supported Plaintiffs' arrests.

88.     The conduct of all individually named Defendants was motivated by malice and/or involved reckless and callous indifference to Plaintiffs' constitutional rights. Defendants engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for Plaintiffs' constitutional rights.

89.     At the time of Defendants' actions described herein, no reasonable officer with the same information could have believed that their actions were lawful in light of clearly established law. Therefore, the individually named Defendants are not entitled to qualified immunity.

| | |
|---|---|
| **Count 2** | **42 U.S.C. § 1983:  Initiation of Criminal Charges Without Probable Cause and for an Improper Purpose in Violation of Fourth and Fourteenth Amendments** |

90.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

91.     As described above, Defendants Alonzo, Sharp, and Fonseca, while acting under the color of law and within the scope of their employment deprived Plaintiffs of their Fourth and Fourteenth Amendment rights.

92.     On February 16, 2022, while acting under color of Texas law, Defendant Alonzo deprived Plaintiffs or caused them to be deprived of their rights under the Fourth and Fourteenth Amendments by knowingly and recklessly initiating a criminal proceeding against Plaintiffs without probable cause.

93.     Defendant Alonzo pursued felony failure to report with the intent to conceal charges against Plaintiffs for an improper purpose and specifically out of her resentment of

Plaintiffs' assertions of their constitutional rights and compliance with their professional duties and federal law.

94.    The outcome of the criminal proceedings initiated by Defendant Alonzo was favorable to Plaintiffs as a grand jury no-billed each of their cases.

95.    Defendants Alonzo, Sharp, and Fonseca violated the Fourth and Fourteenth Amendments by pursuing felony criminal charges against Plaintiffs without probable cause as the facts within their knowledge were not reasonably sufficient to support the belief that Plaintiffs had committed an offense. No reasonable officer would have concluded that the facts supported charges against Plaintiffs for failure to report with the intent to conceal.

96.    The conduct of all individually named Defendants was motivated by malice and/or involved reckless and callous indifference to Plaintiffs' constitutional rights. Defendants engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for Plaintiffs' constitutional rights.

97.    At the time of Defendants' actions described herein, no reasonable officer with the same information could have believed that their actions were lawful in light of clearly established law. Therefore, the individually named Defendants are not entitled to qualified immunity.

### Count 3        42 U.S.C. § 1983:  Supervisory Liability

98.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

99.    As described above, Defendant Sharp, while acting under the color of law and within the scope of her employment, deprived Plaintiffs of their Fourth and Fourteenth Amendment rights.

100.     Defendant Sharp facilitated, approved, condoned, consciously turned a blind eye, or some combination of the foregoing to Defendant Alonzo's malicious pursuit of criminal charges and the false arrests of Plaintiffs.

101.     Defendant Sharp was aware that no probable cause existed to support felony criminal charges for failure to report with the intent to conceal. And yet, Defendant Sharp assisted Defendant Alonzo in drafting affidavits and obtaining arrest warrants, effectuating Plaintiffs' arrests, and otherwise pursuing criminal charges against Plaintiffs.

102.     Defendants Sharp and City of Midland were aware of and on notice of Defendant Alonzo's repeated pattern of unconstitutional and unprofessional behavior that had resulted in the dismissal of numerous other criminal cases in Midland. And in failing to train and supervise Defendant Alonzo in conducting reliable and trustworthy investigations and in providing reliable and trustworthy sworn testimony before courts, Defendants Sharp and City of Midland were deliberately indifferent to the known or obvious fact that constitutional violations would continue to result from Defendant Alonzo's misconduct.

103.     Defendant Sharp caused the violation of the Fourth and Fourteenth Amendments by participating in and condoning the pursuit of felony criminal charges against Plaintiffs without probable cause as the facts within her knowledge were not reasonably sufficient to support the belief that Plaintiffs had committed an offense. Defendants Sharp and City of Midland further caused the Fourth and Fourteenth Amendment violations by being deliberately indifferent to Defendant Alonzo's repeated misconduct. No reasonable officer would have concluded that the facts supported charges against Plaintiffs for failure to report with the intent to conceal.

104.     Defendants Sharp and City of Midland's conduct was motivated by malice and/or involved reckless and callous indifference to Plaintiffs' constitutional rights. Defendants Sharp

and City of Midland engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for Plaintiffs' constitutional rights.

105.    At the time of Defendant Sharp's actions described herein, no reasonable officer with the same information could have believed that their actions were lawful in light of clearly established law. Therefore, Defendant Sharp is not entitled to qualified immunity.

### Count 4        42 U.S.C. § 1983:  Municipal Liability

106.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

107.    Municipalities may be held liable under 42 U.S.C. § 1983 for constitutional deprivations committed pursuant to a policy, custom, or practice of the municipality. Even absent an officially adopted policy, a custom or practice that is so persistent and widespread that it fairly represents a municipal policy will support liability against the municipality. A pattern of unconstitutional conduct may be shown on the part of the municipal employees who are not policymakers.

108.    Defendant City of Midland at all times relevant to this complaint has maintained policies, customs, or practices that caused and were the moving force behind the violation of Plaintiffs' constitutional rights.

109.    The acts and omissions of each individually named Defendant were caused by said policies, customs, or practices.

110.    Defendant City of Midland's policymakers were deliberately indifferent as to said policies, customs, or practices.

111.    Said policies, customs, and practices included a failure to adequately train and supervise officers in conducting reliable and trustworthy investigations and in providing reliable and trustworthy testimony before judicial officers.

112.    Defendant City of Midland was aware and thereby on notice of a repeated pattern of unconstitutional and unprofessional behavior on the part of Defendant Alonzo in failing to conduct reliable and trustworthy investigations and in failing to provide reliable and trustworthy testimony before judicial officers.

### Count 5        State Law Cause of Action:  False Arrest & False Imprisonment

113.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

114.    As described above, Defendants Alonzo, Sharp, and Fonseca, in their individual capacities willfully detained Plaintiffs, without their consent, and without authority of law.

115.    Defendants Alonzo, Sharp, and Fonseca arrested Plaintiffs for the felony offense of failure to report with the intent to conceal. And Defendants Alonzo, Sharp, and Fonseca did so lacking probable cause and lacking any reasonable basis to conclude Plaintiffs had committed the offense.

116.    Defendant Alonzo, supported and approved by Defendants Sharp and Fonseca, obtained arrest warrants by swearing to affidavits that intentionally and recklessly contained materially false and misleading statements and omissions.

117.    The grand jury no-billed the charges against Plaintiffs, underscoring the lack of probable cause.

118.    Defendants Alonzo, Sharp, and Fonseca engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for Plaintiffs' constitutional rights. Defendants Alonzo, Sharp, and Fonseca did not act in good faith.

### Count 6        State Law Cause of Action:  Malicious Prosecution

119.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

120.    As described above, Defendants Alonzo, Sharp, and Fonseca, in their individual capacities commenced and continued criminal proceedings against Plaintiffs, for crimes for which they were innocent, lacking probable cause to do so, and doing so while harboring malice towards them.

121.    Defendants Alonzo, Sharp, and Fonseca engaged in this conduct intentionally, willfully, and wantonly, and with deliberate indifference to, and reckless disregard for Plaintiffs' constitutional rights. Defendants Alonzo, Sharp, and Fonseca did not act in good faith.

## DAMAGES

122.    Defendants' actions, both jointly and severally, deprived Plaintiffs of their protected rights under the United States Constitution, federal law, and Texas state law.

123.    As a proximate result of Defendants' actions, Plaintiffs have suffered the deprivation of liberty, reputational harm, public humiliation, distress, pain, and suffering for which they are entitled to compensatory damages, including damages for mental and emotional distress.

124.    Additionally, Defendants Alonzo, Sharp, and Fonseca acted with malice and with intentional disregard for Plaintiffs' constitutional rights for which Plaintiffs are entitled to punitive damages. Such damages would assist in deterring and preventing similar conduct in the future.

## ATTORNEYS' FEES

125.    Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to recover attorneys' fees and costs, including expert fees.

## DEMAND FOR TRIAL BY JURY

126.    Plaintiffs hereby demand a trial by jury on all claims for which the law provides a right to a jury trial.  The jury fee is tendered herewith.

*[Conclusion, prayer, and signatures on following page . . . ]*

## CONCLUSION AND PRAYER

127.    Plaintiffs respectfully pray that all Defendants be cited to appear and answer herein, and that Plaintiffs have judgment against Defendants, jointly and severally, for compensatory, punitive, and emotional distress damages against all individual Defendants, pre-and post-judgment interest, attorneys' fees and costs of court, including expert fees, and all further relief, both legal and equitable, as to which Plaintiffs show themselves justly entitled.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, LLP

By: */s/ Russell Hardin, Jr.*
    RUSSELL HARDIN, JR.
    Attorney in Charge
    Texas State Bar No. 08972800
    JOHN MACVANE
    Texas State Bar No. 24085444
    AISHA DENNIS
    Texas State Bar No. 24128655
5 Houston Center
1401 McKinney Street, Suite 2250
Houston, Texas 77010
(713) 652-9000 phone
(713) 652-9800 fax
Email: rhardin@rustyhardin.com
Email: jmacvane@rustyhardin.com
Email: adennis@rustyhardin.com

LAW OFFICES OF JEFF PARRAS

By: */s/ Jeffrey Parras*
    JEFFREY PARRAS
    Texas State Bar No. 00792741
908 West Wall Street
Midland, Texas 79701
(432) 687-1606 phone
(432) 687-1607 fax
Email: jparras@parraslaw.net

**COUNSEL FOR PLAINTIFFS**