IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| JARED LEE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 7:22-cv-0185-BL |
| | § | |
| CITY OF MIDLAND, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This discovery dispute arises from a suit filed by Plaintiffs Jared Lee, Dana Ellis, Matthew Counts, Gregory McClendon, and Barry Russell against Defendants, pursuing damages for alleged violations of their constitutional rights. *See* ECF No. 62. Plaintiffs seek discovery from non-party Laura Nodolf, Midland County District Attorney, through a subpoena duces tecum asking for both document production and a deposition on written questions. ECF No. 60. Nodolf moves to quash the subpoena, alleging that it is unduly burdensome and seeks privileged information. *See id.* Senior United States District Judge Barbara M.G. Lynn has referred the motion to the undersigned for "recommendation or determination." ECF No. 63.

For the reasons provided below, the Court finds that the subpoena generally seeks non-privileged materials and *some* information that must be produced because it would not be unduly burdensome to do so. In addition, the Court finds that because Nodolf did not include any argument demonstrating why the deposition on written questions should be quashed, she has failed to satisfy her burden for quashing the deposition. Thus, the Court **GRANTS IN PART** and **DENIES IN PART** Nodolf's Motion to Quash.

## I. Background

To determine the evidence relevant to Plaintiffs' claims against Defendants, the Court must first examine the case's procedural history and Plaintiffs' allegations.

### A. Procedural History and Factual Allegations

Plaintiffs bring this action against Defendants City of Midland (Midland), Jennie Alonzo, Rosemary Sharp, and Camilo Fonseca, alleging, among other claims, false arrest, conspiracy, and failure to supervise. 2d Am. Compl. 1–2, 31, 35, ECF No. 62.[1] Defendants Alonzo, Sharp, and Fonseca (Defendant-officers) are law enforcement officers with the Midland Police Department (MPD). *Id.* at 13.

Plaintiffs assert that Defendant-officers arrested them on February 16, 2022, for failure to report child abuse, without probable cause and in retaliation for their response to a rumored sexual assault that occurred on January 18, 2022, at Midland Christian School (MCS). *Id.* at 2, 10, 20, 31, 39. Plaintiffs aver Midland was complicit in the arrests because even though "a grand jury no-billed every . . . case against" Plaintiffs on May 11, 2022, after filing the instant lawsuit on August 30, 2022, Defendants "brought new, retaliatory, and vindictive charges against Plaintiffs . . . again, for failure to report child abuse." *Id.* at 7, 31. According to Plaintiffs, Defendant-officers signed arrest warrant affidavits that led to their false arrest for "felony failure to report child abuse with the intent to conceal," despite Plaintiffs handling the incident appropriately and cooperating during the police investigation. *Id.* at 17–20. Plaintiffs contend Defendant-officers prompted their arrests by including "deliberate and reckless" false allegations or misstatements in the arrest warrants,

[1] During the pendency of this motion, Plaintiffs amended their complaint in accordance with Judge Lynn's order granting Defendants' motion to dismiss but providing Plaintiffs the opportunity "to amend as to Plaintiffs' claims asserted against the City of Midland." *See* ECF Nos. 48, 55, 62. Significantly, Plaintiffs have dropped pendant state law claims asserted in the Original Complaint and assert jurisdiction solely under federal question. *Compare* Compl. 5, 34–35 (ECF No. 1), *with* 2d Am. Compl. 10 (asserting federal question jurisdiction under 28 U.S.C. § 1331 and § 1343), 38–54 (listing no state law cause of action). Because Plaintiffs' Second Amended Complaint is the operative pleading, the Court references it in establishing the background facts relevant to Nodolf's Motion to Quash.

and "creat[ing] the . . . false impression that . . . [Plaintiffs] were aware that a student had been sexually assaulted," even though Plaintiffs had already determined the rumor to be unfounded. *Id.* at 17, 21–22. Plaintiffs further aver that Defendant-officers colluded with the Midland County District Attorney's Office (MCDAO), and specifically Nodolf, to bring the second round of charges by tainting the grand jury and obtaining indictments without probable cause. *Id.* at 31, 33–34. Through these allegedly unconstitutional actions, Plaintiffs assert Midland has "maintained a policy, custom, and practice of substandard ethical supervision . . . in their investigative and testimonial functions." *Id.* at 35. Plaintiffs contend alleged policymakers—(1) Chief of Police Seth Herman; (2) City Manager Robert Patrick; and (3) Mayor Patrick Payton—approved or ratified these actions. *Id.* at 6–7, 35.

On September 19, Plaintiffs served a subpoena on Nodolf, directing her to produce certain documents and provide answers to depositions on written questions. Mot. to Quash 1–2, ECF No. 60 [hereinafter Mot.]. Nodolf originally filed a motion to quash on October 3, 2023 (ECF No. 49), but after belatedly conferring with Plaintiffs and "reach[ing] an agreement regarding the discovery request[s]," Nodolf withdrew the motion. ECF No. 53; Pls.' Resp. 4, ECF No. 61. Plaintiffs amended the subpoena clarifying that none of the requests were seeking information from a juvenile prosecution or child protective agency, withdrawing request eighteen, and adding search terms to help narrow Nodolf's search. ECF No. 60-1, at 25;[2] Pls.' Resp. 4. After attempting to comply with the more limited subpoena, Nodolf apparently determined that the requests still requested privileged information or were overly burdensome, and filed the instant motion on November 27, 2023. ECF No. 60; Pls.' Resp. 4–5. Plaintiffs filed their Response on December 18, 2023 (ECF No. 61), and Nodolf filed her Reply on December 26, 2023. ECF No. 64.

[2] Page citations to the parties' exhibits refer to the electronic page number assigned by the Court's electronic filing system.

**B. The Parties' Positions**

Plaintiffs' subpoena[3] seeks the following:

1. Your case file pertaining to MC1, including but not limited to, all investigation notes, records, research, memoranda, witness statements, meeting minutes, grand jury presentations, and correspondence pertaining to MC1.

2. Your case file pertaining to MC2, including but not limited to, all investigation notes, records, research, memoranda, witness statements, meeting minutes, grand jury presentations, and correspondence pertaining to MC2.

3. Items in [y]our case file pertaining to the Trinity Case that relate to, discuss, mention, or reference MC1 and/or MC2, including but not limited to, all investigation notes, records, research, memoranda, witness statements, meeting minutes, grand jury presentations, and correspondence within the Trinity Case.

4. Non-privileged communications or other documentation pertaining to the MC1 Incident or the MC2 Incident which is not part of your case file.

5. Non-privileged communications with any third parties relating to MC1, including but not limited to text message communications with any officer or employee of MPD.

6. Non-privileged communication with any third parties relating to MC2, including but not limited to text message communications with any officer or employee of MPD.

7. Non-privileged communications with any third parties relating to the Warrants, including but not limited to text message communications with any officer or employee of MPD.

8. Non-privileged internal communications pertaining to and/or referencing the Plaintiffs or MCS from January 1, 2022 to date.

9. All documents, records, communications, and/or calendar entries which reflect meetings you had with any MPD officer pertaining to, relating to, discussing, mentioning, or referencing MC1 or MC2 from January 1, 2022 through the date of your recusal from MC2.

10. All records, notes, witness statements, recordings, meeting minutes, or other documentation and correspondence pertaining to, relating to, discussing, mentioning, or referencing the Warrants, the Search Warrants, and/or the MC1 Arrests.

11. All documentation or other information provided by you to MPD prior to the execution of the Warrants pertaining to the MC1 case.

---

[3] In Plaintiffs' amended subpoena to Nodolf, all requests were narrowed in scope, providing: "[n]othing in this request, or any other request herein, should be construed to seek or request any record from a juvenile prosecution, [Child Protective Services (CPS)], [Department of Family and Protective Services (DFPS)], or any other child protective agency." *See* ECF Nos. 60-1, 61-12.

12. All correspondence between you and Officer Alonzo from January 1, 2022 to date pertaining to, relating to, discussing, mentioning, or referencing MC1 or MC2.

13. All correspondence between you and Officer Sharp from January 1, 2022 to date pertaining to, relating to, discussing, mentioning, or referencing MC1 or MC2.

14. All correspondence between you and Officer Fonseca from January 1, 2022 to date pertaining to, relating to, discussing, mentioning, or referencing MC1 or MC2.

15. All correspondence sent and/or received by Jennifer Lively relating to MC1 or MC2 from January 1, 2022 to date.

16. All correspondence sent and/or received by Matt Friez, in your possession, relating to MC1 or MC2 from January 1, 2022 to date.[4]

17. All correspondence between you and Tara Friez relating to MC1 or MC2 from January 1, 2022 to date.

18. Copies of communications with Child Protective Services and/or DFPS relating to the MC1 Incident and/or the MC2 Incident.[5]

19. Transcripts or recordings from any meetings and/or testimony provided by [A.M.][6] relating to the MC1 Incident, not including any [Child Advocacy Center (CAC)] interviews.

20. Transcripts or recordings from any meetings and/or testimony provided by the parents of [A.M.] relating to the MC1 Incident, not including any CAC interviews.

21. Transcripts or recordings from any meetings and/or testimony provided by [N.M.] relating to the MC2 Incident, not including any CAC interviews.

22. Transcripts or recordings from any meetings and/or testimony provided by the parents of [N.M.] relating to the MC2 Incident.

23. Copies of all communications with the media relating to the Plaintiffs, MCS, MC1, and/or MC2.

---

[4] In Plaintiffs' amended subpoena to Nodolf, requests sixteen and seventeen were modified to include: "[t]he term 'your' here includes the Office of the District Attorney, any employee of that office, and any elected official in that office." *See* ECF No. 60-1, at 25; ECF No. 61-12, at 6.

[5] Plaintiffs withdrew this request after conferring with Nodolf but before she filed the instant motion. *See* ECF No. 60-1, at 30; ECF No. 61-12, at 6. Because Plaintiffs no longer seek item eighteen, the Court expresses no view on whether it should be subject to production.

[6] Requests nineteen through twenty-two ask for information from minor children—the alleged victims in MC1 and MC2. To protect the privacy of these minors, the Court identifies them only by their initials.

24. All documentation and correspondence relating to the decision to recuse your office from prosecuting the MC2 charges.

25. All documentation and correspondence you provided to the Odessa County District Attorney relating to MC2.

ECF No. 60-1, at 28–31; ECF No. 61-12, at 4–7.

Nodolf argues that the Court must quash the subpoena because it is "overbroad, unduly burdensome, and improperly seek[s] privileged and otherwise protected information under Texas law." Mot. 3. She explains that because the subpoena "define[s] 'DA,' 'you,' and 'your' as 'Laura A. Nodolf in [her] individual capacity and . . . capacity as the Midland County District Attorney and includes . . . employees, . . . and any other persons acting on [her] behalf," she would have to search the communications of fifty-five current employees at her office. *Id.* at 5. In addition, she asserts the requests are facially overbroad. *Id.* Nodolf specifically points to requests four through eight, ten through seventeen, and twenty-three through twenty-five, arguing that they seek "'[a]ll' records, documentation, and correspondence related to a particular subject." *Id.* She also contends that "[a]t a minimum," requests four through seventeen and twenty-three through twenty-five are overbroad. *Id.* Nodolf further avers that while she has made "diligent efforts to comply with request number [nine] of the original subpoena," it is still overbroad and unduly burdensome. *Id.* at 3; Nodolf's Affidavit 4, ECF No. 60-1 [hereinafter NP.'s Aff.]. Moreover, Nodolf argues that the requests are duplicative because while requests one through three ask for her MC1, MC2, and Trinity Case files, "the remaining requests combine to require [her] to produce all . . . information within the case files." Mot. 7 n.4. Although she does not refer to any specific request, Nodolf contends she "offered to narrow the requests to . . . communications . . . between [her] or []Lively

and Midland Chief of Police Seth Herman; [Defendant] Alonzo; [Defendant] Sharp; and Greg McCright[,] regarding" MC1 and MC2.[7] *Id.* at 3 n.1.

In addition, Nodolf posits that the subpoena should be quashed in its entirety because the information is protected and excluded from discovery under Texas law. *Id.* at 5. According to Nodolf, Texas Civil Practice & Remedies Code (TCPRC) § 30.006 exempts law enforcement agencies from discovery in a civil suit when the requested documents are related to, and would interfere with, investigation or prosecution of a crime. *Id.* at 5–6. Thus, she maintains that requests twelve through fourteen should be quashed because they request documents related to cases still being prosecuted. *Id.* at 6. Similarly, Texas Government Code § 552.108(a)(1)—the Texas Public Information Act (TPIA)—excepts from disclosure information related to investigation or prosecution if it would interfere with prosecutorial duties. *Id.* Nodolf also contends that the subpoena requires her to produce her prosecution files, mental impressions, opinions, and legal theories, which are protected work product under the TPIA. *Id.* at 7. More specifically, she asserts the TPIA exempts from disclosure "information prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation." *Id.* Further, Texas Code of Criminal Procedure 20A prohibits her "from disclosing anything that transpired before the grand jury." *Id.* at 8. She provides an affidavit in support to bolster her position by essentially repeating the same arguments made within her motion. *See* NP.'s Aff. 2–5.

Plaintiffs provide in their Response additional context for their subpoena request, explaining that Nodolf is "a key witness" and they requested documents "contain[ing] facts that will assist in understanding the criminal investigations that led to the two baseless and ultimately unsuccessful prosecutions against Plaintiffs." Pls.' Resp. 1. They assert that Nodolf approved

---

[7] McCright is (or was) apparently Deputy Chief of MPD. 2d Am. Compl. 36.

presenting the first charge (MC1)[8] to the grand jury, which returned no-bills for Plaintiffs, and after Plaintiffs informed Defendants of their intent to sue, MPD turned over its investigation of the second charge (MC2)[9] to MCDAO. *Id.* at 2. According to Plaintiffs, Nodolf pursued MC2, as well as a similar case involving Defendant-officers, and "the wrongful arrests of Christian educators [at Trinity School of] Midland for a purported failure to report alleged child abuse"—i.e., the Trinity Case. *Id.* Nodolf then allegedly dropped the Trinity Case and recused herself from MC2 "after [Defendant] Alonzo perjured herself while testifying about [the] events." *Id.* at 2–3. MC2 was then transferred to and dismissed by the Ector County District Attorney's Office (ECDAO). *Id.*

Plaintiffs aver that Nodolf had "regular meetings and communications" with Defendants and other MCDAO personnel, including updates on grand jury proceedings. *Id.* at 3–4. In support, Plaintiffs included in their Response a voicemail Nodolf left for Defendant Sharp, where Nodolf indicated that she did not want to "'give up' on the case against Plaintiffs." *Id.* at 4 (citing ECF No. 61-9). Plaintiffs also assert that despite submitting a public records request (ECF No. 61-10) to Nodolf, they have yet to receive a response. Pls.' Resp. 4.

As to Nodolf's arguments in her Motion to Quash, Plaintiffs contend that despite conferring with Nodolf and believing they had modified the subpoena to her satisfaction, Nodolf is, for the first time, arguing that every request seeks protected work product and that the requests should be "limited to a specific number of document custodians." *Id.* Plaintiffs explain that had Nodolf suggested limiting the number of custodians, Plaintiffs would have obliged. *Id.* at 5. Plaintiffs

[8] MC1 refers to the prosecution against Plaintiffs resulting from the alleged sexual assault that occurred at MCS on January 18, 2022.

[9] MC2 refers to the prosecution against Plaintiffs resulting from a separate incident of alleged failure to report child abuse after a student hit another student with a bat at MCS. *See* 2d Am. Compl. 7–8. Plaintiffs assert that while this incident occurred on November 15, 2021, the prosecution was not initiated until after no-bills were returned against Plaintiffs in MC1. *Id.* at 31–33.

also reject Nodolf's contention that any underlying prosecution to this case is "still being prosecuted or investigated." *Id.* And they aver that none of the requested materials—except for the withdrawn request for "grand jury presentations"—constitute work product or grand jury materials that would fall under the Texas Code of Criminal Procedure's protection. *Id.* at 6. Plaintiffs posit that the inclusion of the words "any and all" in their discovery requests does not automatically make them overbroad as long as the requests are limited to a "type or class of documents." *Id.* at 7 (citation omitted).

Moreover, Plaintiffs aver that the documents "bear relevance to [their] claims and to Defendants' defenses"—i.e., "the City's policy of initiating criminal charges without a proper, reliable and trustworthy investigation." *Id.* In addition, Plaintiffs believe that "key documents" such as draft warrants, as well as call logs and calendar entries for meetings between police and prosecutors, are missing from Midland's production but nevertheless should be in MCDAO's possession, custody, or control. *Id.* Plaintiffs also contend that the search terms are intended to narrow Nodolf's search, and the requests are limited to relevant events—MC1, MC2, and the Trinity Case. *Id.* at 8. In Plaintiffs' view, the requests are limited in time, spanning less than two years and covering only the relevant period: between January 2022, when the incident occurred, and up until the request was made in September 2023, when MC2 was dismissed. *Id.*

Regarding Nodolf's asserted privileges, Plaintiffs assert that TCPRC § 30.006 does not protect the requested materials because their cases are no longer being prosecuted. *Id.* at 9. Plaintiffs concede that the grand jury presentations in requests one through three, "without first petitioning a court . . . , are protected under 20A.204" and therefore withdraw the requests. *Id.* at 10–11. Plaintiffs, however, only withdraw the requests as they relate to protected materials and

still ask for other materials related to the grand jury, such as grand jury subpoenas or summons.[10] *Id.* at 11. In addition, while Plaintiffs agree some requested items may be protected as "core work product," several items are not, and "[d]isclosure of this non-core work product is appropriate here because Plaintiffs have a substantial need for this material and face an undue hardship in obtaining the substantial equivalent . . . by other means." *Id.* at 11–12. Plaintiffs explain that they have a substantial need because of the materials' relevance to their *Monell* liability claims against Midland and will face an undue hardship if they are denied the materials, as the items were not produced by Defendants in discovery or by Nodolf after receiving a TPIA request. *Id.* at 14. Thus, they assert this is their last potential avenue to discover these materials. *Id.*

In her Reply, Nodolf reasserts that Plaintiffs' requests are overbroad and contends that Plaintiffs fail to address this argument in their Response. Nodolf's Reply 1, ECF No. 64 [hereinafter Reply]. She also reiterates that considering every asserted privilege, the entire subpoena is protected from production. *Id.* at 2–3. Nodolf rejects Plaintiffs' contention that they offered to limit the number of custodians and instead contends that they "conferred at length on limiting document custodians" but "Plaintiffs refused to agree to such an amendment." *Id.* at 2 n.1. Lastly, Nodolf asserts that because Plaintiffs' requests are overbroad, the subpoena sweeps in protected core work product, but to the extent it seeks non-core work product, Plaintiffs fail to demonstrate substantial need and undue hardship. *Id.* at 4. For instance, Plaintiffs fail to show why evidence supporting the claim that "underlying charges were . . . prepared by Defendants Alonzo and Sharp . . . would not be obtainable from [such] Defendants." *Id.* The Court considers the parties' competing positions below.

[10] Because Plaintiffs withdrew requests for grand jury presentations within requests one through three, the Court expresses no view on whether they should be produced.

## II. Legal Standards

Two rules govern this dispute: Federal Rules of Civil Procedure 26 and 45. "Federal Rule of Civil Procedure 45 explicitly contemplates the use of subpoenas in relation to non-parties and governs subpoenas served on a third party, such as [Nodolf], as well as motions to quash or modify or to compel compliance with such a subpoena." *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 931 (N.D. Tex. 2017) (internal quotation marks and citation omitted). Rule 45(d)(3) provides that "[o]n timely motion, the court . . . *must* quash or modify a subpoena that" either "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden."[11] FED. R. CIV. P. 45(d)(3)(A)(iii), (iv) (emphasis added). Where the moving party asserts the subpoenaed information is privileged or protected, the party must: (1) "expressly make the claim; and" (2) "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." FED. R. CIV. P. 45(e)(2)(A)(i)–(ii).

In analyzing whether a subpoena presents an undue burden, courts consider the following factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "Whether a burdensome subpoena is reasonable must be determined according to the facts of the case, such as the party's need for the documents [or information] and the nature and importance of the litigation." *Id.* (internal quotation marks and citation omitted). In addition, "if the person to whom the document

[11] Nodolf does not argue that the subpoena should be quashed under FED. R. CIV. P. 45(d)(3)(A)(i)–(ii).

request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." *Id.*

The party seeking to quash the subpoena bears the burden of demonstrating "that compliance with the subpoena would be unreasonable and oppressive," or that compliance will lead to disclosing privileged or protected material. *Id.* (internal quotation marks omitted) (quoting *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)). "The moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Lead GHR Enters., Inc. v. Am. States Ins. Co.*, No. 3:17-mc-91-M-BN, 2017 WL 6381744, at *6 (N.D. Tex. Dec. 14, 2017) (quoting *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015)). Modifying the subpoena "is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818.

When "a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (alteration in original) (quoting *Williams*, 178 F.R.D. at 110). Rule 26(b) provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). Information must therefore be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) ("Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements."

(citing *Rocha v. S.P. Richards Co.*, No. 5:16-CV-411-XR, 2016 WL 6876576, at *1 (W.D. Tex. Nov. 17, 2016))); *see also Thomas*, 327 F.R.D. at 609–10 (noting that "discovery from a third party as permitted through a subpoena issued under Rule 45 is limited to the scope of discovery permitted under Rule 26(b)(1) in the underlying action, and [d]iscovery outside of this scope is not permitted" (alteration in original) (internal quotation marks and citation omitted)).

## III. Analysis

### A. Nodolf fails to meet her burden of establishing good cause for quashing the deposition on written questions.

Nodolf moves to quash the deposition on written questions[12] but advances no argument for the Court to consider. *See* Mot. 4–8 (arguing only that the subpoena should be quashed because the requested documents are privileged or would subject her to an undue burden). Nodolf did not attempt to meet her "heavy burden of demonstrating good cause" to quash the deposition. *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) (citations omitted); *see Med. Protective Co. v. Hipke*, No. 6:22-cv-233, 2023 WL 5682406, at *1–2 (E.D. Tex. June 14, 2023) (concluding that plaintiff failed to show "a particular and compelling need for . . . an order" quashing the deposition on written questions because its "conclusory assertions of injury [were] insufficient" (internal quotation marks, alterations, and citation omitted)). The Court thus denies her Motion to Quash the written deposition.

### B. State law privileges and work product doctrine are inapplicable because federal law applies.

Nodolf argues that the subpoena should be quashed in its entirety because such information is protected and excluded from discovery under Texas law. Mot. 5. The Court disagrees.

[12] According to the copy provided by Nodolf, the deposition seeks non-substantive information such as name and job title of the deponent and foundational elements for establishing the admissibility of any information produced. ECF No. 60-1, at 15–16.

### *1. Privilege*

According to Nodolf, TCPRC § 30.006 exempts law enforcement agencies from discovery in a civil suit when the requested documents are related to investigation or prosecution of a crime. *Id.* at 5–6. Thus, she maintains that requests twelve through fourteen should be quashed because they request documents related to cases still being prosecuted. *Id.* at 6. Similarly, Texas Government Code § 552.108(a)(1) excepts from disclosure information related to investigation or prosecution if it would interfere with such duties. *Id.* Plaintiffs counter that the materials requested are not under the protection of TCPRC § 30.006 because prosecution of their cases has terminated. Pls.' Resp. 9. In addition, they contend that the Texas Public Records Act is inapplicable under the Federal Rules of Civil Procedure. *Id.* at 11.

While Plaintiffs argue in passing that the Texas Public Records Act is inapplicable under the Federal Rules, Plaintiffs and Nodolf fail to acknowledge that *all* of Nodolf's asserted state privileges are inapplicable in this case. Rule 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. That is, "Federal Rule of Evidence 501 dictates that federal common law, not state law, governs the privileges in federal question cases." *Roque v. City of Austin*, No. 1-17-CV-00932-LY, 2018 WL 5848988, at *2 (W.D. Tex. Nov. 7, 2018).

As previously noted, Plaintiffs filed the instant case in federal court, alleging federal question jurisdiction. *See* 2d Am. Compl. 10 (asserting jurisdiction under 28 U.S.C. §§ 1331 and 1343). Because Plaintiffs' claims arise under federal law, federal common law governs applicable privileges in this case. *Willy v. Admin. Rev. Bd.*, 423 F.3d 483, 495 (5th Cir. 2005) ("As [plaintiff's] claims arise under federal law—and are before us on federal question jurisdiction under 28 U.S.C. § 1331—the federal common law of . . . privilege governs our analysis."). While

Nodolf argues the materials are "privileged and otherwise protected information under Texas law" (Mot. 3), courts have consistently rejected this notion, holding that in § 1983 cases pending in federal court, federal common law determines privilege claims. *See Am. Civ. Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1342–43 (5th Cir. Unit A Mar. 1981) ("Since the only claims and defenses asserted here relate to federal [§] 1983 claims, . . . any privilege created by [Mississippi law] . . . does not apply in federal court . . . ."); *Ambler v. Nissen*, No. 1:20-cv-1068-LY, 2023 WL 443806, at *2 (W.D. Tex. Jan. 26, 2023) (holding defendant's asserted privilege under Texas Local Government Code § 143.089 inapplicable because "federal common law ultimately controls the privileges in § 1983 actions filed in federal court" (citation omitted)); *Roque*, 2018 WL 5848988, at *2 ("[F]ederal common law controls the privileges in federal court § 1983 actions.").

Nodolf raises no federal law privilege, and the Court will not gratuitously grant relief on the basis of any privilege not asserted.[13] *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege exemption from discovery bears the burden of

[13] A parallel law enforcement privilege does exist under federal common law, which "'protect[s] government documents relating to an *ongoing criminal investigation*.'" *Hacking v. Toyota Motor Corp.*, No. 4:16-CV-00388-ALM-CAN, 2017 WL 10188773, at *3 (E.D. Tex. Mar. 30, 2017) (emphasis added) (quoting *S.E.C. v. Cuban*, No. 3:08-CV-2050-D, 2013 WL 1091233, at *8 (N.D. Tex. Mar. 15, 2013)) (discussing extent of the law enforcement privilege under federal common law and comparing it to privileges under TCPRC § 30.006 and Texas Government Code § 552); *see In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006) (acknowledging that "[f]ederal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation" (citation omitted)).

Nevertheless, even if Nodolf had properly invoked the federal privilege, the result would be the same. "The law enforcement privilege does not extend to the information in . . . concluded criminal investigations." *Cuban*, 2013 WL 1091233, at *8. Nodolf asserts that the requested information relates to ongoing prosecutions (Mot. 6), yet in her affidavit concedes that MC1 ended in a no-bill from the grand jury and MC2 was dismissed. NP.'s Aff. 3 ¶ 7. Given these facts, Plaintiffs understandably contend that both MC1 and MC2 have been dismissed and there is no ongoing criminal matter related to the instant suit. Pls.' Resp. 9. Similarly, Plaintiffs' Second Amended Complaint reflects that the Trinity Case was also dismissed. Thus, because the record before the Court shows that the criminal investigations and prosecutions have concluded, and Nodolf offers no specific evidence to the contrary (other than a conclusory assertion that the matters "are still being prosecuted"), the federal law enforcement privilege would be inapplicable. *See Hacking*, 2017 WL 10188773, at *4 ("Once the investigation concludes, . . . [p]laintiffs should be afforded access to the materials . . . .").

demonstrating its applicability."). Because the state law privilege she asserts does not apply in this federal § 1983 action, her request to quash the subpoena on this basis is denied. *See, e.g.*, *Finch*, 638 F.2d at 1345 (reversing "district court's order to the extent it holds that [state law] renders [state commission's] files privileged from production in federal court"); *Ambler*, 2023 WL 443806, at *2 (overruling state statutory privilege claim in § 1983 action and requiring production of "investigative files concerning . . . Internal Affairs investigations"); *Est. of Rossiter v. Bd. of Cnty. Comm'rs of Arapahoe Cnty.*, No. 08-cv-01661-LTB-KLM, 2009 WL 1609398, at *4–5 (D. Colo. June 9, 2009) (ordering plaintiffs to produce medical records that "may be privileged" under state law but recognizing that in a § 1983 federal court action "[t]here is no physician-patient privilege").

### 2. *TPIA and Work Product Doctrine*

Nodolf contends that every request requires her to produce her prosecution files, mental impressions, opinions, and legal theories, which are protected work product under TPIA. Mot. 7. More specifically, she asserts the TPIA exempts from disclosure "information prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation." *Id.* While Plaintiffs agree some requested information may be protected as "core work product," they maintain that several items requested are not, and "[d]isclosure of this non-core work product is appropriate here because Plaintiffs have a substantial need for this material and face an undue hardship in obtaining the substantial equivalent . . . by other means." *Id.* at 11–12. Plaintiffs explain that they have a substantial need due to the materials' relevance to their *Monell* liability claims against Midland, and will face an undue hardship if they are denied the information because the materials were not produced by Defendants through discovery or by Nodolf in

response to a TPIA request. *Id.* at 14. Thus, they assert that this is their last potential avenue to discover these materials. *Id.*

First, "[b]y its own terms, the [TPIA] has no effect on civil discovery." *Piatt v. City of Austin*, No. 1:07-CV-520 LY, 2008 WL 11334173, at *4 (W.D. Tex. Sept. 29, 2008) (granting plaintiff's motion to compel documents claimed by defendants to be privileged under the TPIA); *see* TEX. GOV'T CODE § 552.005. Thus, even if state law had any applicability on this question, which it does not, it would provide no safe haven for Nodolf in regard to producing the requested documents.

Second, any similar protection afforded to work product under federal law would not require quashing the document requests because Nodolf is not a party. "Federal courts have repeatedly held that a non-party witness may not invoke work product protection to preclude production of materials prepared by or for that witness, even if created in contemplation of the witness's own pending or anticipated litigation." *Smith v. Fifthian*, No. 03-2076, 2006 WL 548529, at *1 (W.D. La. Mar. 2, 2006); *see also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. Apr. 2023 update) ("Documents prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit . . . ."). Nodolf is not a party to the instant case, and while the documents claimed to be protected work product were prepared to prosecute Plaintiffs in a separate criminal action, they were not prepared *for* any party in *this* case (Plaintiffs or Defendants) in anticipation of *this* litigation. *See Way v. Alza Corp.*, No. 3:09-CV-1276-O, 2009 WL 10704904, at *3 (N.D. Tex. Nov. 16, 2009) (requiring production of autopsy reports prepared by medical examiners because work product only protects those documents prepared by or for a "party to the lawsuit" and the "reports were not collected or assembled for

[p]laintiff"); *see also In re Subpoena Duces Tecum to the Wayne Cnty. Prosecutor*, 477 N.W.2d 412, 413 (Mich. Ct. App. 1991) (examining federal Rule 26(b)(3) in interpreting comparable state rule in action against city and police officers following death of plaintiff's husband, concluding work product doctrine did not provide basis for quashing subpoena directed to *non-party* county prosecutor office and requiring production of prosecutor's investigation file concerning husband's death). Accordingly, Nodolf's Motion to Quash on the basis that the requested items are privileged or protected under the work product doctrine is denied.

**C. Nodolf did not satisfy her burden of establishing the subpoena is overbroad or unduly burdensome.**

"A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). When asserting undue burden, a party must "present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (quoting *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004)); *see Heller*, 303 F.R.D. at 490 (explaining that to meet his burden, "the party resisting discovery [must] show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"). "Broad-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection to" a discovery request. *Brady*, 238 F.R.D. at 437 (citation omitted).

Nodolf summarily claims that the entire subpoena is overly broad and unduly burdensome. She explains that because the subpoena defines "'DA,' 'you,' and 'your' as 'Laura A. Nodolf in your individual capacity and capacity as the Midland County District Attorney and . . . your employees, . . . and any other persons acting on [her] behalf," she would have to search the

communications of fifty-five current employees at her office. Mot. 5. In addition, she asserts the requests are overbroad because requests four through eight, ten through seventeen, and twenty-three through twenty-five seek "'[a]ll' records, documentation, and correspondence related to a particular subject." *Id.* She also contends that "[a]t a minimum," requests four through seventeen and twenty-three through twenty-five are overbroad. *Id.* While Nodolf avers she has made "diligent efforts to comply with request number [nine] of the original subpoena," she maintains that it is still overbroad and unduly burdensome. *Id.* at 3.

Plaintiffs aver that inclusion of the words "any and all" in their discovery requests does not inevitably render them overbroad, as long as the requests are limited to a type or class of document. Pls.' Resp. 7 (citation omitted). Moreover, the documents "bear relevance to Plaintiffs' claims and to Defendants' defenses"—i.e., "the City's policy of initiating criminal charges without a proper, reliable and trustworthy investigation." *Id.* In addition, Plaintiffs believe that "key documents" such as draft warrants, call logs between police and prosecutors, and calendar entries for meetings with the MCDAO, are missing from Midland's production but nevertheless should be in MCDAO's possession. *Id.* Plaintiffs further contend that the search terms are intended to narrow Nodolf's search, and the requests are limited to relevant events such as MC1, MC2, and the Trinity Case. *Id.* at 8. In Plaintiffs' view, the requests' time period is limited, spanning less than two years and covering only the relevant period: between January 2022, when the incident occurred, and up until the requests were made in September 2023, when MC2 was dismissed. *Id.*

Nodolf's objections are insufficient to meet her evidentiary burden. While Nodolf provided an affidavit, she merely repeats the arguments made in her motion and only briefly addresses the burden involved in responding to the requests. *See* NP.'s Aff. 4 ¶ 11 (arguing that request number nine, "even as amended, is overbroad and unduly burdensome"), ¶ 12 (complying

with the subpoena would require searching the communications of fifty-five current employees as well as previous employees). Such objections do not "describe how the discovery requests were unduly burdensome in terms of time, expense, or procedure." *Heller*, 303 F.R.D. at 491 (citation omitted); *see also S.E.C. v. Reynolds*, No. 3:08-CV-0438-B, 2016 WL 9306255, at *3 (N.D. Tex. Apr. 29, 2016) (finding that the non-party failed to carry its burden in its motion to quash because even though it provided an affidavit, it was conclusory and did not "present specific evidence of the time or expense that would be involved in responding to the discovery request, as is required to establish undue burden" (citation omitted)).

Nodolf's conclusory assertion that the subpoena is overbroad and unduly burdensome because it requests "'[a]ll' records, documentation, and correspondence related to a particular subject" and requires her to search the communications of all MCDAO employees is likewise unavailing. Mot. 5. This "provide[s] the Court with no information about the burden involved in responding to these discovery requests." *Heller*, 303 F.R.D. at 491 (quoting *Presbyterian Manors, Inc. v. Simplexgrinnel, L.P.*, No. 09–2656–KHV, 2010 WL 4942110, at *2 (D. Kan. Nov. 30, 2010)); *see, e.g.*, *Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051, at *3 (E.D. La. Jan. 21, 2015) (explaining that an objection "is boilerplate when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request" (citation omitted)). The Court therefore denies Nodolf's Motion to Quash the subpoena on these unsupported grounds.

**D. The Court limits some and quashes other requests after finding them facially overbroad or duplicative.**

Despite Nodolf's failure to demonstrate undue burden or overbreadth, the Court "[o]n motion or on its own, . . . must limit the frequency or extent of discovery . . . if it determines that

. . . the discovery sought is unreasonably cumulative or duplicative." *Andra Grp.*, 312 F.R.D. at 456 (brackets in original) (quoting FED. R. CIV. P. 26(b)(2)(C)(i)). The Court must also do so if it "find[s] that a subpoena presents an undue burden" because it "is facially overbroad." *Wiwa*, 392 F.3d at 818. Finding that some of the requests are facially overbroad or seek irrelevant material, the Court accordingly limits some requests and quashes others.

Request four seeks "[n]on-privileged communications or other documentation pertaining to the MC1 Incident or the MC2 Incident which is not part of [Nodolf's] case file." ECF No. 61-12, at 4. Requests five through seven require Nodolf to produce "[n]on-privileged communications with any third parties relating to MC1, . . . MC2, . . . [and] the Warrants, including but not limited to text message communications with any officer or employee of MPD." *Id.* at 4–5. Requests fifteen through seventeen ask for "[a]ll correspondence . . . relating to MC1 and MC2 from January 1, 2022 to date" between Nodolf and other non-parties: (1) Jennifer Lively, assistant district attorney (ADA), who, according to Plaintiffs, "executed affidavits detailing how Defendant Alonzo had lied," made grand jury presentations in MC1 and MC2, and allegedly joked about Plaintiffs' civil suit while talking to Nodolf about presenting MC2 to the grand jury (2d Am. Compl. 33–34); (2) Matt Friez, who originally reported MC1 to the police (*see id.* at 17; *see also* ECF No. 70 (detailing the Friezes' alleged involvement in explaining the Court's reasoning for denying and granting in part the Friezes' own motion to quash)); and (3) Tara Friez, who, like Matt Friez, was involved in reporting MC1 to the police. *See* ECF No. 70. Request twenty-three seeks "[c]opies of all communications with the media relating to the Plaintiffs, MCS, MC1, and/or MC2." ECF No. 61-12, at 6.

In *Wiwa*, the Fifth Circuit determined that a subpoena seeking documents from a non-party was overbroad because it was not limited to items concerning the non-party's relationship with the

defendant and the claims in dispute. 392 F.3d at 820. Similarly, here, requesting documentation from Nodolf relating to *any* third party is patently overbroad. *See id.* at 821 (limiting subpoena to only those documents relating directly to non-party's position at defendant company *and* defendant's conduct in relation to claims asserted by plaintiff). Request four does not specify any person and requires Nodolf to produce every communication or document related to MC1 or MC2 "which is not part of your case file." Similarly, requests five through seven, while seeming to target non-defendant officers at MPD, sweeps in *any* person Nodolf ever talked to about MC1, MC2, or the Warrants, which is excessively overbroad. Requests fifteen through seventeen ask for Nodolf's communications with other non-parties involved in the underlying incidents. Lastly, request twenty-three asks for communications with the media, a general and unspecified entity with no alleged connection to the claims or defenses in this case other than simply covering the events as they unfolded. This alone, renders the requests facially overbroad.

Having found requests four through seven, fifteen through seventeen, and twenty-three unreasonably overbroad, the Court discusses the undue burden factors[14] to determine whether the requests require modification or must be quashed.

#### *1. Request four is quashed and requests five through seven are modified.*

While difficult to engage in the undue burden analysis based on Nodolf's insufficient objections and the parties', at times, non-specific briefing, the Court finds that several factors weigh in favor of either quashing or limiting requests four through seven.

[14] As discussed, Nodolf did not meet her burden in showing that the subpoena is unduly burdensome or overbroad, and Plaintiffs' briefing provides little more in the way of specific evidence or information that would aid the Court in conducting the full undue burden analysis. For these reasons, the Court addresses only those factors for which it has sufficient information.

First, these requests appear to bear little relevance to the instant case.[15] Plaintiffs have not demonstrated how conversations Nodolf may have had with non-defendant officers or other third parties relate to Plaintiffs' claims or Defendants' defenses. In addition, Plaintiffs provide no explanation as to how Nodolf's conversations with "any third party," or even more general "non-privileged communications," which have not been alleged to have ever occurred, relate to their claims of false arrest or Midland's "policy of initiating criminal charges without a proper, reliable and trustworthy investigation." Pls.' Resp. 7; *see* 2d Am. Compl. 43–47, 50–54.

Thus, despite Nodolf's summary objections, the Court finds that based on the record as developed, requests four through seven are facially irrelevant to Plaintiffs' claims against Defendants. Distilled to its essence, Plaintiffs claim Defendants initiated charges against them without probable cause and that Midland has a policy of initiating charges without conducting a proper investigation. Plaintiffs have made no showing, either through their pleadings or briefing, that the requested material—i.e., purported communication between *Nodolf* and unspecified *third parties*, and other general communications in request four—have any "possible bearing on" *Defendants'* (1) belief that probable cause existed or (2) decision to pursue criminal charges. *Tate v. DG La. LLC*, 653 F. Supp. 3d 316, 320 (E.D. La. 2023) ("Discovery should be allowed unless . . . the information sought can have no possible bearing on the claim or defense of the party seeking discovery." (internal quotation marks and citation omitted)).

The Court finds no allegations in the operative complaint, and Plaintiffs provide no argument or evidence in their Response, suggesting that any communication between Nodolf and an unidentified third party (as opposed to Defendants) actually occurred or in any way informed charging decisions ultimately made by Defendants. Without such an alleged connection, Plaintiffs

[15] In addition, the Court notes that requests four through seven are not limited to a specific, relevant timeframe.

have presented nothing more than speculation that Nodolf *may* have spoken to the "third parties," and fail to demonstrate how that fact, if it happened, produces material relevant to either Defendants' decision to prosecute or Plaintiffs' obligation to report. *See Ducharme v. Nova Cas. Co.*, No. 6:13-3108, 2015 WL 631131, at *2–3 (W.D. La. Feb. 10, 2015) (granting non-party's motion to quash because the sought after documents had "no direct connection or relevance to the plaintiff's claims or alleged injuries or any defense thereto presented by the defendants" and were also not discoverable for impeaching non-parties on a collateral matter); *Dileo v. Lane*, No. 12-522-BAJ-SCR, 2013 WL 5409214, at *1 (M.D. La. Sept. 25, 2013) (quashing request for cell phone records where "defendant ha[d] not shown that any such communications ever occurred" and was more akin to a fishing expedition "based on the speculative premise that [plaintiff] communicated . . . with [others]" rather "than discovery reasonably calculated to lead to the discoverable evidence"); *Sherrod, Teed, Vanderhagen & Ware v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 WL 2678820, at *1 (E.D. Mich. July 11, 2022) (denying plaintiffs' motion to compel all documents related to tweets made during trial that potentially caused the public to question party's legal position or attorney's integrity, because such information was "not relevant to the *claims or defenses*" in the trial); *cf. Davis v. Carmel Clay Schs.*, 286 F.R.D. 411, 413 (S.D. Ind. 2012) (concluding that communication between non-party prosecutors related to investigation of criminal matter arising from alleged bullying incident at school would not lead to discovery of relevant information, such as the defendant-school's alleged knowledge about the incident).

In sum, these requests (1) are not limited to Nodolf's relationship with the parties involved and claims in dispute and thus, are patently overbroad; (2) ask for communications with no supporting allegations that would establish their relevance; and (3) have an unlimited or unreasonably long time period.

Modifying the subpoena, however, "is preferable to quashing it outright." *Wiwa*, 392 F.3d at 818. Because Nodolf offered to produce communications with Chief of Police Herman and Deputy Chief McCright (Mot. 3 n.1), requests five through seven should include these individuals. *See Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625, 629 (E.D. Pa. 1996) (enforcing subpoena request in line with plaintiff's offered limitation regarding the starting date for production); *see also Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 619–20 (E.D. La. 2022) (modifying request for all incoming and outgoing phone calls because although plaintiff "fail[ed] to connect these cell phone records to th[e] alleged misconduct," the court could limit the request to cell records from non-parties relevant to underlying subject matter). In addition, the Court finds that Mayor Payton and City Manager Patrick's—alleged policymakers that "approved" Defendant-officers' investigation practices and Plaintiffs' arrests (2d Am. Compl. 7, 9, 34–35, 44, 46, 51–52)—communications are potentially relevant to Plaintiffs' claims against Midland. *See id.* at 31 (alleging Nodolf asked Defendant Sharp to let her know when she could begin prosecuting MC2), 46 (averring Chief Herman, Mayor Payton, and City Manager Patrick approved the MC2 charges). Accordingly, the Court limits requests five through seven to Nodolf's communications with Chief of Police Herman, Mayor Payton, Manager Patrick, and Deputy Chief McCright, and restricts the time period to January 18, 2022, to August 3, 2023.

Nodolf, however, did not similarly offer to limit request four, a catch-all request for communications with any person Nodolf ever spoke to about MC1 or MC2. Because the Court leaves intact or modifies other requests for communications and documentation related to the relevant persons, subject matter, time period, etc., the Court cannot limit the request without making it redundant. As such, it should also be quashed. *Nugent v. Scott Fetzer Co.*, No. 19-

14759, 2020 WL 1322268, at *12 (E.D. La. Mar. 20, 2020) (quashing request for "all communications between [plaintiff] and any persons" related to the underlying subject matter because it was "overbroad and unsalvageable through appropriate limiting scope that would not result in the request being subsumed by" another request); *see also Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, No. C18-1385-JCC, 2020 WL 3271769, at *3 (W.D. Wash. June 17, 2020) (declining to modify and instead quashing the subpoenas because "the [c]ourt [could] not modify the subpoenas without effectively rewriting them").

In sum, the Court grants Nodolf's Motion to Quash item four, and modifies requests five through seven to cover: communications with Chief of Police Herman, Mayor Payton, City Manager Patrick, and Deputy Chief Greg McCright relating to MC1, MC2, and the Warrants, including but not limited to text message communications between January 18, 2022, and August 3, 2023.

### *2. Request twenty-three must be quashed.*

Like requests four through seven, there is little background provided as to why Nodolf's communications with the media are relevant to the instant case. Plaintiffs simply claim the investigation, arrests, and subsequent no-bills "received significant media attention" and that Defendant-officers utilized the media to create a spectacle and humiliate Plaintiffs. 2d Am. Compl. 20–21. Unlike the "third parties," however, there is only a single alleged connection between Nodolf and the media. In Plaintiffs' Second Amended Complaint they linked a news story that quotes Nodolf's opinion on the Trinity Case being dismissed, and it references her motion to dismiss the Trinity Case after Defendant Alonzo allegedly perjured herself. *See id.* at 34 n.14. The story was published on April 27, 2023, and recounts events occurring in the Trinity Case over the previous several days.

This request suffers a similar deficiency to the requests discussed above: irrelevance. The Court struggles to see how any communication related to a statement made by Nodolf to the media about the dismissal of another prosecution, occurring over a year after Plaintiffs' arrests, in any way informed either Defendants' decision to prosecute or Plaintiffs' obligation to report.[16] *See Ducharme*, 2015 WL 631131, at *2–3; *cf. Lozada v. Cnty. of Nassau*, No. CV 16-6302 (JS) (AYS), 2017 WL 6514675, at *5 (E.D.N.Y. Dec. 20, 2017) (denying motion to quash because plaintiff "submitted sufficient testimony and allegations to support her claim that [non-party] had direct communications with [p]laintiff that [were] relevant to her claim").

Moreover, there is no time limit on this request. The request is facially overbroad for this additional reason. *See Bavely, Chapter 7 Tr. of AAA Sports, Inc. v. Panini Am., Inc.*, No. 4:22-cv-093, 2023 WL 3686806, at *6 (E.D. Tex. Jan. 27, 2023) ("Facially overbroad subpoenas include those [where] . . . the period covered by the requests is unlimited." (internal quotation marks, alteration, and citation omitted)); *S.E.C. v. Laura*, No. 18 Civ. 5075 (NGG) (VMS), 2020 WL 5152873, at *5 (E.D.N.Y. Aug. 31, 2020) (finding it unreasonable "to request responsive records through such a late date given that its allegations of relevant misconduct" ended approximately two years before the request date).

Thus, finding this request patently overbroad, irrelevant to Plaintiffs' claims or Defendants' defenses, and unconstrained to the pertinent time period, the Court quashes request twenty-three. *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 6:16-cv-366-Orl-40LRH, 2019 WL 13037212, at *3–4 (M.D. Fla. June 28, 2019) (granting in part non-party's motion to quash because despite non-party's failure to demonstrate that producing the documents would be unduly burdensome, the

[16] Plaintiffs offer no other basis or reasoning for the Court to order production of any possible communication between Nodolf and the media.

court exercised its independent duty to oversee discovery and found the requests patently overbroad (citations omitted)).

### *3. The Court modifies in scope requests fifteen through seventeen.*

Request fifteen seems to substantially overlap with another request. It requests Nodolf's communications with ADA Lively relating to MC1 or MC2, which is at least partially mooted by request eight—"internal communications . . . referencing Plaintiffs or MCS." ECF No. 61-12, at 5–6. Request eight likely includes Nodolf's communications with ADA Lively about prosecuting Plaintiffs' cases—i.e., MC1 and MC2. Despite this, the request seems relevant and is limited to the pertinent subject matter. While Lively is also not a party to this case, as the person who reportedly prepared Defendants' affidavits, presented MC1 and MC2 to the grand jury, and worked with Nodolf on these matters, her communications with Nodolf are relevant (at least for discovery purposes) to the underlying investigation of Plaintiffs' cases. 2d Am. Compl. 33–34.

Similarly, as more fully discussed in the Court's order on the Friezes' motion to quash (ECF No. 70), the Friezes, although non-parties, admit to reporting information concerning MC1 to Defendant-officers, who investigated MC1 and assisted Nodolf's prosecution of the incident. 2d Am. Compl. 17–18, 25, 27–28, 30–31. Because the Friezes had multiple interviews (*see* ECF No. 70, at 7–8, 12) with Defendant-officers and undisputedly provided information related to and/or used in the investigation, it is reasonable to conclude Nodolf had some level of contact or communication with the Friezes during her investigation and prosecution of the matter. As such, the Court finds any communication or exchange of information between Nodolf and the Friezes to be relevant for purposes of discovery. *See Tesla Motors, Inc. v. Johnson*, No. 1:16-cv-1158, 2017 WL 11500988, at *5 (W.D. Mich. Dec. 11, 2017) (finding that "despite their status as nonparties," they were "not merely 'bystanders' in th[e] case" and therefore their "communications sought in

discovery [were] directly and highly relevant to [plaintiff's] claims"). Plaintiffs, however, do not allege that the Friezes had anything to do with reporting MC2. *See* 2d Am. Compl. 1–54; ECF No. 70. To that extent, the requests extend past the relevant scope of the Friezes' alleged involvement.

The requests are also not limited to the relevant time period. Requests sixteen and seventeen, while restricted to January 1, 2022, to date, are not constrained to the Friezes' or Nodolf's alleged involvement in the underlying events. *See* ECF No. 70 (allowing the subpoena requests to extend to May 31, 2022, around when the Friezes' involvement in MC1 is alleged to have ended, considering MC1 was no-billed on May 11, 2022). In request fifteen, Plaintiffs ask for communications between Nodolf and Lively from January 1, 2022, to date, despite restricting request number nine from January 1, 2022, up until Nodolf's recusal from MC2, which occurred on August 3, 2023. ECF No. 61-12, at 5; *see* 2d Am. Compl. 34. This date appears to mark the end of Nodolf and the MCDAO's involvement in the cases. *See* 2d Am. Compl. 34 (alleging that after Nodolf and Lively recused themselves from MC2, the state district court appointed the ECDAO to the case). While Plaintiffs contend that September 2023—both when they originally subpoenaed Nodolf and when the ECDAO dismissed MC2—should be the end date for the relevant time period, they do not allege that Nodolf participated in MC2 *after* she recused, or that the Friezes participated beyond reporting MC1.

Moreover, request twenty-five asks for "documentation and correspondence" Nodolf provided to ECDAO, which will ensure Plaintiffs receive anything directly related to prosecution of MC2 after the recusal date. Thus, the requests should be limited to reflect the end date of the individuals' participation in the underlying events. In addition, the events underlying this lawsuit did not begin until January 18, 2022, when the alleged sexual assault occurred. *See id.* at 22. As

such, the time period in request fifteen should be limited to January 18, 2022, until August 3, 2023 (Nodolf's recusal), and the time period and subject matter in requests sixteen and seventeen should be limited to MC1 and January 18, 2022, until May 31, 2022 (following no-bill in MC1). *See Wiwa*, 392 F.3d at 821 ("limit[ing] the temporal scope of the subpoena . . . to the period alleged in [plaintiff's] complaint").

In sum, after finding requests four through seven, fifteen through seventeen, and twenty-three patently overbroad, the Court grants Nodolf's Motion to Quash requests four and twenty-three and modifies the other requests as follows: (1) items five through seven as originally requested, except the requests are limited to communications with non-parties Deputy Chief McCright, Chief Herman, Mayor Payton, and City Manager Patrick (rather than *any* "third parties"), from January 18, 2022, to August 3, 2023; (2) item fifteen as originally requested except for the time period, which shall now be January 18, 2022, to August 3, 2023; and (3) items sixteen and seventeen as originally requested except for the time period and subject matter, which shall now be January 18, 2022, to May 31, 2022, and include MC1 only.

**E. Because Plaintiffs offered to limit the number of custodians, the Court orders the parties to appropriately limit Nodolf's search to those directly involved in prosecuting MC1, MC2, or the Trinity Case, or preparing the Warrants in such cases.**

The only arguable non-boilerplate objection Nodolf advances for finding the subpoena unduly burdensome is that the subpoena defines "'DA,' 'you,' and 'your' as 'Laura A. Nodolf in [her] individual capacity and capacity as the Midland County District Attorney and includes . . . employees, . . . and any other persons acting on [her] behalf," which requires her to search fifty-five current employees' communications. Mot. 5. At a minimum, this definition applies to several requests: one through three, nine, eleven through fourteen, twenty-four, and twenty-five. *See* ECF No. 60-1, at 28–31; ECF No. 61-12, at 4–7.

Nodolf provided no evidence demonstrating the time or expense this would require, but the Court recognizes that fulfilling such a request could potentially necessitate expending significant time, considering Plaintiffs provided forty-four search terms. In Plaintiffs' Response, they claim that Nodolf never asked to limit the number of custodians when they conferred, but had she, Plaintiffs would have agreed to such a request. Pls.' Resp. 4–5. Nodolf, on the other hand, asserts that her requests for a more limited scope of custodians were rejected. Reply 2 n.1. Without more information, however, the Court cannot determine who the limited custodians should be. The Court therefore orders the parties to confer within seven (7) days from the date of this Order and agree upon the number of persons whose communications or computers Nodolf must search, limiting the search to custodians for information involving MC1, MC2, the Trinity Case, or the warrants for Plaintiffs' arrests.

## IV. Conclusion

Plaintiffs, through their subpoena, seek information from Nodolf, a non-party, that is both unduly and not unduly burdensome, patently overbroad, and non-privileged. Accordingly, Nodolf's Motion to Quash is (1) **GRANTED** as to items four and twenty-three; (2) **GRANTED as modified** as to items five through seven and fifteen through seventeen; (3) **DENIED** as to all other subpoena requests; and (4) **DENIED** as to the deposition on written questions. Further, the parties are **ORDERED** to confer within **seven (7) days of the date of this Order** to determine the individuals' communications that Nodolf must search for responsive documents. Thus, Nodolf shall produce: (1) items one through three as originally requested except for the grand jury presentations because Plaintiffs have withdrawn that request; (2) items eight through fourteen, nineteen through twenty-two, twenty-four, and twenty-five as originally requested; (3) item fifteen as originally requested except for the time period, which shall now be: January 18, 2022, to August

3, 2023; (4) items five through seven as originally requested, except the requests are limited to communications with non-parties Deputy Chief McCright, Chief Herman, Mayor Payton, and City Manager Patrick (rather than *any* "third parties"), from January 18, 2022, to August 3, 2023; and (5) items sixteen and seventeen as originally requested except for the time period and subject matter, which shall now be: January 18, 2022, to May 31, 2022, and include MC1 only.[17] Nodolf shall comply with the subpoena as modified within **twenty-one (21) days of the date of this Order.**

**SO ORDERED.**

Dated: February 15, 2024.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

[17] Plaintiffs have withdrawn request number eighteen.