## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| JARED LEE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:22-cv-0185 |
| | § | |
| CITY OF MIDLAND, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion for Summary Judgment (ECF No. 99), filed by Defendants Jennie Alonzo, Rosemary Sharp, and Camilo Fonseca (the "Officer Defendants") and the City of Midland, and the Partial Motion for Summary Judgment (ECF No. 94), filed by Plaintiffs Jared Lee, Dana Ellis, Matthew Counts, Gregory McClendon, and Barry Russell.  Also pending before the Court is Plaintiffs' Motion to Strike and Objections to Defendants' Summary Judgment Evidence.  ECF No. 124.

On December 20, 2024, the Court heard argument on the Motions.  For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' claims against Fonseca, Plaintiffs' claim for false arrest based on violations of the Fourteenth Amendment in connection with MC1, and all claims based on MC2.  Plaintiffs' Motion to Strike is **GRANTED IN PART**.  The remainder of Defendants' and Plaintiffs' Motions are **DENIED**.

## I.   BACKGROUND

Plaintiffs are former administrators and coaches affiliated with Midland Christian School ("MCS"), who assert claims arising out of alleged false arrests stemming from an alleged failure to report two separate incidents, referred to in the Second Amended Complaint as "MC1" and

"MC2." ECF No. 62 ("Sec. Am. Compl.") ¶¶ 32–36. Broadly, MC1 refers to arrests relating to a January 2022 incident involving a Midland Christian student (the "victim") being allegedly assaulted with a baseball bat in the locker room. *Id.* ¶¶ 41–81. MC2 refers to arrests relating to an incident in November 2021, when a Midland Christian student swung a bat and hit another student, who suffered a concussion. *Id.* ¶¶ 84–91.

As a preliminary matter, Plaintiffs move to strike portions of Defendants' evidence, namely declarations of the Officer Defendants, J.D. Robertson, and former Midland Chief of Police Seth Herman. ECF No. 124. Plaintiff challenges the declarations as flawed and not constituting proper summary judgment evidence because they include hearsay, statements outside of the declarant's personal knowledge, and/or violate the sham affidavit doctrine. Plaintiffs also move to strike Robertson's declaration on the grounds that Defendants do not cite this declaration in their Motion for Summary Judgment.

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). At the summary judgment stage, evidence relied upon need not be presented in admissible form, but it must be "capable of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) (emphasis omitted). Neither legal conclusions nor statements made without personal knowledge are capable of being so presented. *See* Fed. R. Evid. 602, 701, 702.

Plaintiffs' objections to the declaration of Sharp are **SUSTAINED** as to paragraphs 11, 14, 17, 23, and 24, which constitute hearsay or improper conclusions, and as to paragraphs 18,

19, 21, and 23 as improper legal conclusions, but the objection to paragraph 16 is **OVERRULED**. Plaintiffs' objections to paragraphs 13 and 17 of the declaration of Alonzo as hearsay are **SUSTAINED**, but the objections to paragraphs 20 and 21 are **OVERRULED**. Plaintiffs' objections to paragraphs 16 and 17 of the Fonseca declaration are **SUSTAINED** as improper legal conclusions, but the objection to paragraph 15 is **OVERRULED**. Plaintiffs' objections to the Herman declaration are **OVERRULED AS MOOT**. Plaintiffs' objections to the Robertson affidavit are **SUSTAINED** because it is not cited in Defendants' briefs and is thus irrelevant.

### A. MC1

On January 20, 2022, Dana Ellis, the MCS secondary school principal, learned of a potential hazing incident involving the baseball team and a bat in the locker room; the incident supposedly caused the victim to miss multiple days of school due to injuries. P. App. Ex. 2 (audio recording of Ellis interview, Feb. 11, 2022) at 16:25–19:05; D. App. 291–92.[1] Ellis testified at her deposition that, as an administrator, she has access to attendance records, and she "immediately logged in and saw that he [the victim] – not only had he not missed, he wasn't even tardy." D. App. 292.

The next morning, Ellis informed MCS superintendent Jared Lee and MCS athletic director Gregory McClendon about the reports she had received of the incident. P. App. 313–14; D. App. 295. McClendon and Matthew Counts, the MCS assistant principal, interviewed some

---

[1] In this opinion, "P. App." refers to Plaintiffs' consecutively paginated appendices submitted in support of their affirmative Motion for Partial Summary Judgment and Response to Defendants' Motion for Summary Judgment. ECF Nos. 123, 127, 136. Similarly, "D. App." refers to Defendants' consecutively paginated appendices submitted in support of their Motion for Summary Judgment (ECF Nos. 114, 114-1), and "D. Resp. App." refers to Defendants' appendix submitted in response to Plaintiffs' Motion for Partial Summary Judgment (ECF No. 128-1). In addition, both parties submitted audio recordings in support of their respective Motions. The Court notes that portions of Defendants' appendices are difficult to read and, at times, illegible. *E.g.*, D. App. 287, 1681–91.

of the baseball players involved, including the perpetrator and the victim.  P. App. 25–28.

Counts made notes of his interviews, including statements from the victim:

> I learned of the baseball incident that happened on Wednesday January 19th around 9am Friday the 21st.  That is when I assisted Coach McClendon in calling down nine baseball players to the office. . . .
>
> The next player called down was [the victim] who did not know who prodded him with the bat because it was dark but said he that he was not penetrated and had his shorts on.
>
> . . .
>
> After lunch I called down [the victim] to my office.  After being questioned, [the victim] told me it was [perpetrator] who prodded him. He stated that he was not penetrated and had his shorts on.

P. App. 25–26.

> McClendon's notes include the following statement from the victim:
>
> [the victim] – said the lights were turned out, he was pushed down on his stomach & the bat was used to poke him in the bottom, I asked if he had clothes on & he said yes. I said so the bat did not go up inside of your rectum & he said no. He said he did not know who did it & he down played it to not be a big deal.

P. App. 28.

Barry Russell, the MCS baseball coach, had been hospitalized with COVID-19 during this time, and did not return to MCS until the following Monday, January 24, 2022.  D. App. 657–60.  On that day, Russell addressed the baseball team, and the perpetrator subsequently confessed to Counts, as reflected in Counts's notes:

> That afternoon, [the perpetrator] came to my office and confessed to prodding [the victim] with the bat and messing with him.
>
> I called [the victim] in again and asked if [the perpetrator] had penetrated him and he told me that it was just prodding and he had his shorts on the entire time. I asked him if he was sure and he told me yes sir.

P. App. 26.

The perpetrator was punished by the school, and the school wrapped up its investigation by January 27, 2022.  P. App. 26.

On January 27, 2022, Matthew Friez, a parent of a baseball player, emailed Lee and reported that his son, who was not present in the locker room during the incident, claimed a sexual assault had occurred involving the victim.  P. App. 275–87.  Lee informed Friez of the school's investigation and conclusion that no sexual assault had occurred, writing via email that "[y]ou have every right to contact the authorities[,]" and "[y]ou are welcome to make a report based upon your son's perception and information he gave to you, but I can tell you that after many interviews with the players involved, there has been no evidence of a sexual assault."  *Id.*

On January 28, 2022, Friez reported the alleged sexual assault to the Midland Police Department.  D. App. Ex. 10 (audio recording of 911 call placed by Friez, Jan. 28, 2022), Ex. 11 (body cam recording of Friez interview, Jan. 28, 2022).  That same day, Officer Camilo Fonseca visited MCS and interviewed Lee.  P. App. Ex. 9 (body cam video of interview with Lee, Jan. 28, 2022).  Fonseca prepared a report detailing his findings, including Lee's statement that the victim "had told them a sexual assault did not occur, but instead, the baseball bat had been pressed against his bottom involving with [sic] some pushing and grabbing."  P. App. 352–53.

On February 11, 2022, the victim was interviewed by a forensic interviewer at the Child Advocacy Center.  P. App. 364, 407–48.  During the interview, the victim said the bottom of a baseball bat had been "put up his butt" while his clothes were on.  P. App. 424–31.  The victim was also interviewed by law enforcement and underwent a sexual assault nurse examiner ("SANE") exam.  P. App. 369, 383.  No injury reflecting a sexual assault was reported from the SANE exam.  *Id.*  Later that day, Sergeant Jennie Alonzo and Lieutenant Rosemary Sharp interviewed Ellis.  P. App. Ex. 2 (audio recording of Ellis interview, Feb. 11, 2022).  On

February 14, 2022, Lee contacted Alonzo regarding certain document requests she had made, and he requested that she obtain a warrant. P. App. 370; P. App. Ex. 11. That afternoon, Alonzo returned with a search warrant and interviewed Ellis, Lee, Counts, and McClendon. P. App. Ex. 6 (audio recording of Ellis interview, Feb. 14, 2022); D. App. Ex. 17 (audio recording of Lee interview, Feb. 14, 2022); P. App. 375–83. Sharp supervised Alonzo during the MC1 investigation. P. App. 530, 546, 559–60. Sharp testified during her deposition that throughout the investigation, she had been updating Deputy Chief McCright, Lieutenant Chatwell, and District Attorney Laura Nodolf. P. App. 552.

On February 15, 2022, a meeting took place at the Midland Police Department, during which the participants, including at least Alonzo, Sharp, Nodolf, and Assistant District Attorney Jennifer Lively, discussed MC1 and whether to institute charges. P. App. 535. In addition, a draft arrest warrant affidavit prepared by Alonzo was reviewed. P. App. 111–12, 560. At that meeting, a decision was made to move forward with the arrests of the Plaintiffs. P. App. 113–16.

On February 16, 2022, Alonzo signed identical arrest warrants and supporting affidavits charging all five Plaintiffs with a failure to report an aggravated sexual assault and with intent to conceal, in violation of Texas Family Code § 261.101(a) and § 261.109(c). P. App. 1–5 (Ellis), 6–10 (Lee), 11–15 (McClendon), 16–20 (Russell), 21–23 (Counts). The warrants each state that according to the affiant Alonzo, the particular Plaintiff "on or about the **20th** day of **JANUARY**, A.D. **2022** . . . did then and there having reasonable cause to believe that the physical and mental health and welfare of [the victim], a child had been and may be adversely affected by the offense of **AGGRAVATED SEXUAL ASSAULT**, and the said then and there knowingly as a professional failed to report as provided by law, and has a duty to report under 261.101(a) of the

Texas Family Code, . . . the actor intended to conceal the abuse or neglect." *E.g.*, P. App. 2 (emphasis in original).

That same day, the warrants were signed by a Justice of the Peace, and the Plaintiffs were arrested at MCS.  P. App. 358–59.  On May 11, 2022, Assistant District Attorney Lively presented the case to a grand jury.  D. App. 1020, 1030.  The grand jury no-billed the charges, which were then dismissed by the Midland County District Attorney's Office.  D. App. 91–98. On July 30, 2022, Plaintiffs filed this lawsuit.  ECF No. 1.

### B.  MC2

On November 15, 2021, several months before the events of MC1 took place, a freshman at MCS was swinging a bat in a classroom and hit a sophomore, who suffered an injury.  The injured student and those who observed the incident believed it to be an accident, as did the injured student's parents.  P. App. 632–33, 685, 708.  The incident was not reported to law enforcement.  P. App. 624–25, 691–92.  Evidence presented to the grand jury indicates that Ellis met with the injured student's parents on November 16, 2021, the day after the incident, and Counts and Lee emailed the parents about the incident on November 17, 2021.  D. App. 123–24. The injured student returned to school on November 30, 2021, and the record suggests that Lee agreed to provide certain accommodations to the student, including some related to grades and medical expenses.  D. App. 129–30.

Alonzo and Sharp were the investigating officers on MC2.  D. App. 1030, 1043; P. App. 216, 602–03, 619.  Alonzo conducted an initial interview with the parents of the injured student. P. App. 51, 216.  After the grand jury returned a no-bill on the MC1 indictments on May 11, 2022, Sharp took over the investigation from Alonzo.  P. App. 603–04.  Sharp never interviewed

anyone in connection with MC2 and testified that she did not attempt to speak to Lee, Ellis, or Counts due to the publicity surrounding MC1.  P. App. 634–35, 678, 680.

On May 11, 2022, after the grand jury declined to indict on the MC1 charges, District Attorney Nodolf texted Chief of Police Herman and informed him that she would proceed with "the other case."  P. App. 1407.  Alonzo and Sharp met with Lively before the decision was made to indict Lee, Ellis, and Counts on MC2.  The summary judgment record contains recordings of conversations between Sharp, Alonzo, and Lively regarding the MC2 case, including Lively's recommendations to go straight to the grand jury, and the decision not to obtain search warrants, given that MC2 was proceeding "in the mix of the first case."  P. App. 217–21; D. App. Ex. 19 (audio recording labeled "New Recording 13") at 1:05:55–1:06:25. They also discussed a potential strategy in the event the grand jury asked questions about MC1 when deciding whether to indict the Plaintiffs on the MC2 charges.  *Id.* at 1:16:30–1:18:00. During this conversation, Lively referred to the Plaintiffs as "sons of bitches," and commented that if Plaintiffs happened to be reindicted on MC1 by the MC2 grand jury, it would make this federal lawsuit "really fun."  *Id.*

In November 2022, Sharp and Lively presented the MC2 charges of Lee, Ellis, and Counts for failure to make a required report of child abuse to the grand jury.  D. App. 90, 1044; P. App. 526.  Sharp presented a PowerPoint presentation, and then Lively presented an additional PowerPoint presentation and "explained the law" on failure to report.  P. App. 704–05.  The grand jury returned a true bill on the MC2 charges against Lee, Ellis, and Counts.

In August 2023, the Midland County District Attorney recused herself from MC2, and the case was reassigned to the Ector County District Attorney's Office.  P. App. 522, 526–27.  In September of 2023, the MC2 charges were dismissed.  P. App. 524.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant may satisfy its burden by pointing to the absence of evidence supporting the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

## III.    ANALYSIS

Plaintiffs bring claims against Defendants Alonzo, Sharp, and Fonseca in their individual capacities, and against the City of Midland for municipal liability. Specifically, regarding MC1, Plaintiffs bring claims against Alonzo, Sharp, and Fonseca under 42 U.S.C. § 1983 for false

arrest and initiation of criminal charges without probable cause and for an improper purpose, in violation of the Fourth and Fourteenth Amendments, and a § 1983 claim against Sharp for supervisory liability.  Regarding MC2, Plaintiffs bring § 1983 claims against Alonzo and Sharp for false arrest and initiation of criminal charges without probable cause and for an improper purpose, in violation of the Fourth and Fourteenth Amendments; a § 1983 claim against Alonzo and Sharp for retaliation through the filing of criminal charges without probable cause, in violation of the First, Fourth, and Fourteenth Amendments; and a § 1983 municipal liability claim against the City of Midland under *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978).[2]

Defendants move for summary judgment on all claims on the grounds that the Officer Defendants are entitled to qualified immunity, and there is no evidence in support of Plaintiffs' claims.  Plaintiffs move for partial summary judgment on their MC1 false arrest claim against Alonzo and Sharp, and on the grounds that Alonzo and Sharp are not entitled to qualified immunity.

On the record during the December 19, 2024, hearing, the Court orally pronounced summary judgment for Defendant Fonseca on all claims asserted against him based on the limited nature of his involvement in reviewing the affidavits and his lack of sufficient knowledge about the underlying incident to be held liable for their content.  The Court took the Summary Judgment and Daubert Motions under advisement.  The Court will first address whether summary judgment is appropriate on Plaintiffs' remaining claims before turning to the issue of qualified immunity.

---

[2] Plaintiffs initially asserted a § 1983 municipal liability claim against the City of Midland as to MC1, which the Court dismissed.  ECF No. 87.

### A.  MC1 Claims

#### 1.  MC1 – False Arrest (Fourth and Fourteenth Amendments)

Plaintiffs seek summary judgment on their § 1983 claim for false arrest in connection with MC1, based on violations of the Fourth and Fourteenth Amendments.  Alonzo and Sharp also move for summary judgment of no liability on this claim.

As an initial matter, Plaintiffs do not respond to Defendants' argument that no evidence supports their claim under the Fourteenth Amendment, and that the Fourth Amendment is the appropriate vehicle to analyze Plaintiffs' claims of unconstitutional seizure.  *See Mayfield v. Currie,* 976 F.3d 482, 486 n.1 (5th Cir. 2020), *as revised*, (Sept. 23, 2020) ("[C]laims for false arrest or for malicious prosecution[] fall under the Fourth Amendment.").  As a result, Alonzo and Sharp are entitled to summary judgment on Plaintiffs' claim for false arrest in MC1 based on violations of the Fourteenth Amendment.

Plaintiffs' remaining false arrest claims under the Fourth Amendment are based on allegedly false statements in the arrest warrant affidavits submitted by Alonzo.  These claims are controlled by the doctrine set forth in *Franks v. Delaware*, 438 U.S. 154, 172 (1978).  To prevail on a *Franks* claim, a plaintiff must establish that the relevant affidavit (1) contains false statements or material omissions, (2) made knowingly or with "reckless disregard for the truth," and (3) that these false statements or material omissions were material to the finding of probable cause.  *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024) (quoting *Franks*, 438 U.S. at 155–56).  "[I]f a plaintiff makes the tripartite *Franks* showing, then any arrest . . . or prosecution lacked probable cause, the defendant officers are not entitled to the protection of the independent intermediary doctrine, and the misstatements or omissions suffice to establish a Fourth Amendment violation."  *Id*. at 620.

Defendants contend that summary judgment is appropriate on the grounds that Plaintiffs do not present sufficient evidence to support any of the three necessary elements to prevail on a *Franks* claim. In addition, Defendants contend that there is insufficient evidence to support a *Franks* claim against Sharp, who did not sign the affidavits.

Regarding the first element, Defendants argue that there are no false or misleading statements in the affidavits, and that the alleged misrepresentations amount to nothing more than quibbling over the use of different terms. However, the summary judgment record indicates that the warrants and affidavits contain multiple material misrepresentations and omissions. At minimum, the affidavits misrepresent the contents of Fonseca's report of his January 28, 2022, visit to MCS and interview of Lee. Specifically, the affidavits state:

> It should be noted that in the original report, Officer Fonseca listed that he spoke with Lee on January 28, 2022. During this interaction, Lee stated that their investigation found the baseball bat did in fact touch [the victim's] anus but did not go inside.

*E.g.*, P. App. 4.

Neither Fonseca's report nor the bodycam footage of his January 28, 2022, interview with Lee contain any statement from Lee that MCS's investigation found that the bat actually touched the victim's anus. *See* P. App. 352 (Fonseca's report, stating that Lee explained "the baseball bat had been pressed against his bottom"); P. App. Ex. 9. On the contrary, the recording indicates that during the interview, Lee expressly addressed Friez's allegation that the victim's anus had been penetrated and explained that nothing in their investigation pointed to any kind of penetration. P. App. Ex. 9 at 6:45–7:00. The distinction is material; Alonzo herself testified during her deposition that to be poked on the buttocks with a bat is not a sexual assault. P. App. 71–72. Sharp agreed that the difference in wording was misleading. P. App. 597.

Similarly, the arrest warrants contain misrepresentations regarding the Plaintiffs' knowledge as of the date of the alleged offense.  Specifically, the arrest warrants state that each respective Plaintiff, "on or about the 20th day of January," had reasonable cause to believe that "a child had been and may be adversely affected by the offense of AGGRAVATED SEXUAL ASSAULT."  *E.g.*, P. App. 2.  However, Alonzo testified during her deposition that she did not actually know when each of the Plaintiffs had the requisite knowledge to commit the alleged offense, and included the January 20 date because that was when Ellis first received a report of a potential hazing incident in the boys' locker room.  P. App. 122–30.  For instance, Alonzo testified that when she executed the affidavits, she was aware that Russell had been out with COVID-19 when the incident occurred and when Ellis first heard of the incident.  *See* P. App. 128.  Despite this, the warrant affidavit states that, on or about January 20, 2022, Russell had reasonable cause to believe that an assault had taken place.  P. App. 17.  The arrest warrants contain similar misrepresentations as to Counts, Lee, and McClendon.  *E.g.*, P. App. 125 ("Q. Do you have any evidence that Mr. McClendon knew on the 20th like you swore to in this complaint that would give him reasonable cause to believe that [the student] had been the victim of an aggravated sexual assault? A. Not at – that I can think of at this time.").  The "on or about" language misleadingly suggests earlier information was given to the Plaintiffs, suggesting more details were shared than actually were to support a claim of reasonable belief.

In addition, the summary judgment record indicates that the affidavits omit facts going to the reliability of the information Plaintiffs received and the credibility of various sources that Plaintiffs relied on in concluding that no reportable sexual assault had taken place.  For example, the affidavits omit the fact that the only source of the "report" of sexual assault that Plaintiffs received were hearsay rumors from non-witness students; specifically, a student who told her

parent, who then told another parent, who told Ellis, and separately Friez's son, who was not present for the incident, and which prompted Friez's emails to Lee and other Plaintiffs.  P. App. 375–85; D. App. 291–92.  Also omitted is the fact that the victim had been interviewed by Counts and confirmed during the interview that his clothes had remained on throughout the incident and denied that the baseball bat entered his anus.  P. App. 25–28.  A reasonable factfinder could conclude that such omissions were material, given that they undermine the affidavits' conclusion that each Plaintiff had "reasonable cause" to believe that a sexual assault had taken place.  *See* Tex. Fam. Code § 261.101(a).  Such evidence is sufficient at summary judgment to create a genuine issue of material fact as to whether the arrest warrants contain false statements or material omissions.

The second element of the *Franks* test requires that the false statements or material omissions were made knowingly or with reckless disregard for the truth.  *Hughes*, 100 F.4th at 619.  The record indicates that at least one omitted statement in the arrest warrant—namely, Russell's purported knowledge of the sexual assault and participation in an investigation when Alonzo knew he had been out sick—raises a sufficient fact question as to this element so as to render summary judgment inappropriate.[3]  Further, the statements of the victim denying a sexual assault occurred were known to the Defendants and yet omitted from the affidavit.

Finally, the third element of the *Franks* test requires that the false statements or omissions be material to the finding of probable cause, which is assessed under the "corrected affidavit" inquiry.  To determine whether the false statements or material omissions were

---

[3] In addition, "[i]f the facts omitted from an affidavit are 'clearly critical' to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself.  *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) (citing *United States v. Thompson*, 615 F.2d 329 (5th Cir. 1980)).  As discussed in the context of the third *Franks* element, at the summary judgment stage under the "corrected affidavit" analysis, the misstatements and omissions in the arrest warrants were arguably critical to the finding of probable cause, and as a result recklessness can be inferred.

necessary for the finding of probable cause, a court must consider the faulty affidavit as if those errors and omissions were removed. *Franks*, 438 U.S. at 156. The "corrected affidavit" must be examined to "determine whether probable cause for the issuance of the warrant survives the deleted false statements and material omissions." *Winfrey v. Rogers*, 901 F.3d 483, 495 (5th Cir. 2018) (citation omitted). Probable cause is a "practical and common-sensical standard." *Florida v. Harris*, 568 U.S. 237, 244 (2013). It looks to the "totality of the circumstances" to determine whether the magistrate with "the facts available to [him] would 'warrant a [person]' of reasonable caution in the belief" to find that the suspect committed the crime for which he is being arrested. *Winfrey*, 901 F.3d at 495.

The arrest warrants charged Plaintiffs with a failure to report an aggravated sexual assault and with intent to conceal, in violation of Texas Family Code § 261.101(a) and § 261.109(c). The reporting requirement in § 261.101(a) of the Texas Family Code mandates that "[a] person having reasonable cause to believe that a child's physical or mental health or welfare has been adversely affected by abuse or neglect by any person shall immediately make a report as provided by this subchapter." In addition, "[a] report should reflect the reporter's belief that a child has been or may be abused or neglected." Tex. Fam. Code § 261.102.

Based on the facts in the summary judgment record, a genuine issue of material fact exists as to whether, absent the misrepresentations and omissions in Alonzo's affidavits, there would be sufficient information to support a finding of probable cause that Plaintiffs knew sexual abuse occurred and intentionally concealed it. The relevant misrepresentations and omissions include the omission of the fact that the victim repeatedly confirmed that no sexual abuse occurred and that the only reports of abuse were from non-witnesses, and the misstatements about the timing and extent of each Plaintiffs' knowledge. As discussed, these omitted facts and

misstatements go to whether Plaintiffs had reasonable cause to believe that a sexual assault took place; with a corrected affidavit, a factfinder could reasonably conclude that Plaintiffs never had reasonable cause to believe that a sexual assault took place, and thus a reporting obligation was never triggered.

Defendants argue that even if the alleged omissions or false statements are disregarded, the undisputed facts are sufficient to create probable cause. In doing so, Defendants make arguments similar to those asserted at the pleadings stage, namely that the correct inquiry is whether there was probable cause for any charge that a reasonable officer could have filed based on the facts, and not the charge in the warrant applications filed by Alonzo. In doing so, Defendants contend that *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004), controls, which emphasizes distancing from the subjective mindset of an arresting officer, and instead focuses on objective facts known at the time of the arrest.

The Court concludes that *Devenpeck*, which involved a warrantless arrest, is inapplicable here. As the Fifth Circuit acknowledged in *Arizmendi v. Gabbert,* 919 F.3d 891, 894 (5th Cir. 2019), the teachings of *Devenpeck* apply much less outside the scope of warrantless arrests. Instead, the Fifth Circuit in *Arizmendi* expressly declined to conclude "that an officer can deliberately or recklessly misstate or omit facts in a warrant affidavit to procure a warrant to arrest someone for a specific crime, then escape liability by retroactively constructing a justification for a warrantless arrest based on a different crime." *Id*. at 903. Finally, it cannot be ignored that the grand jury, hearing all the relevant evidence, declined to indict the Defendants, thereby rejecting the notion of probable cause.

The Court next considers Plaintiffs' MC1 *Franks* claim in relation to Alonzo and Sharp, individually. To be subject to liability under *Franks*, an officer must have assisted in preparing,

presenting, or signing a warrant application. *Melton v. Phillips*, 875 F.3d 256, 263 (5th Cir. 2017). If an officer does not present or sign the affidavit, liability attaches only if "he helped prepare the complaint by providing information for use in it." *Id*. at 264; *see Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021) (holding that liability could attach to an investigator who provided evidence, knew the wording of the affidavit, and recklessly disregarded exculpatory evidence showing that probable cause was lacking).

Defendants contend that summary judgment of no liability for Alonzo and Sharp is appropriate, while Plaintiffs seek summary judgment, arguing that Alonzo signed the arrest warrant affidavits in question and Sharp assisted in providing information for the affidavit. The Court concludes that genuine issues of material fact preclude the granting of both Defendants' and Plaintiffs' Motions on this claim.

It is undisputed that Alonzo signed Plaintiffs' arrest warrant affidavits, and thus has sufficient personal involvement in the presentation of the warrant applications so as to be subject to liability under *Franks*. *E.g.*, P. App. 2. As to Sharp, the Court notes that *Franks* liability "is not limited to the person who prepared or signed the warrant affidavit." *Hughes*, 100 F.4th at 620. Instead, liability can attach to any person directing the inclusion of false information in the affidavit, or any person who supplied false information for the purpose of compiling a warrant affidavit. *Id.*

Here, there is a fact question as to whether Sharp is liable under *Franks*. Sharp participated in the investigation, including interviewing four of the five Plaintiffs, and she personally attended a meeting to review the warrant affidavits before they were executed. *See, e.g.*, P. App. 560–62, 567–68. Sharp testified at her deposition that she read the affidavits and made corrections. *Id.* at 567. In addition, Sharp had knowledge of the investigation and an

opportunity to correct material omissions and misstatements in the affidavits, but she did not. *See Holmes*, 100 F.4th at 620.  For example, Sharp testified that when reviewing the affidavits, she did not confirm that statements purportedly recounting a report prepared by Fonseca were accurate.  P. App. 574–75.  She also did not address misrepresentations and material omissions in the affidavits regarding law enforcement's interview with Plaintiff Ellis, which Sharp attended.  *Id.* at 577–79.  At minimum, there is a fact question as to whether Sharp knowingly or intentionally facilitated the affidavits' material omissions, which is sufficient to confer liability. *See Hughes*, 100 F.4th at 620–22; *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) ("*Franks* liability . . . includes liability for an officer who makes knowing and intentional *omissions* that result in a warrant being issued without probable cause." (emphasis in original)).

For the foregoing reasons, summary judgment is inappropriate on Plaintiffs' Fourth Amendment false arrest claim arising out of MC1.

### 2. MC1 – Initiation of Criminal Charges without Probable Cause (Fourth and Fourteenth Amendments)

Alonzo and Sharp seek summary judgment on Plaintiffs' initiation of criminal charges without probable cause claim arising out of MC1, contending that there is no evidence that the MC1 charges were initiated with malicious motives.  *See Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023) (requiring malice as a necessary element for a malicious prosecution claim).  The elements necessary for a malicious prosecution claim are: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.  In addition, Plaintiff must show the threshold element of an unlawful Fourth Amendment seizure.  *Id.*

As discussed previously, there is a fact question as to whether there was probable cause for the initiation of the MC1 charges.  In addition, the Court finds that the record contains sufficient evidence from which a reasonable factfinder could conclude that both Alonzo and Sharp acted with malicious motives in pursuing the charges.  For example, during a break in an interview of Ellis by Alonzo and Sharp during the investigation, the officers discuss that "we should have body cameras so could you see her f\*\*king attitude," referring to Ellis.  P. App. Ex. 2 at 24:25–50.  Alonzo subsequently announces to Sharp that "I'm pissed. I'm f\*\*king pissed. I'm so mad." *Id.*  These statements, coupled with the decision to charge Plaintiffs with felonies based upon an intent to conceal, as opposed to a lesser charge, could be indicative of malice.  For these reasons, summary judgment on the MC1 malicious prosecution claim is inappropriate.

### 3.  MC1 Supervisory Liability (Sharp)

Defendants argue that no evidence supports Plaintiffs' claim of supervisory liability against Sharp based on her supervision of Alonzo.  A supervisor can be liable under § 1983 "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

As discussed previously, there is a fact question as to whether Sharp is liable under *Franks* for her participation in the preparation, contribution to, and review of the affidavits submitted in support of Plaintiffs' arrest warrant applications.  Thus, there is a fact question whether she affirmatively participated in the act that caused Plaintiffs' constitutional deprivation, and summary judgment on this claim is unwarranted.

### B.  MC2 Claims

Plaintiffs assert claims against Alonzo, Sharp, and the City of Midland based on the allegation that the MC2 charges against Lee, Ellis, and Counts lacked probable cause.  ECF No. 62.  Defendants argue the independent intermediary doctrine bars all of Plaintiffs' claims based on MC2, and that there is no evidence in support of any of the claims.  *See Trevino v. Iden*, 79 F.4th 524, 531 n.4 (5th Cir. 2023) (the independent intermediary doctrine is applicable to false arrest, Fourth Amendment arrest and prosecution, First Amendment retaliatory prosecution, and malicious prosecution claims).  The Court will address the independent intermediary doctrine first, before moving on to the remainder of Defendants' arguments.

### 1.  Preliminary Issue – Independent Intermediary Doctrine

Defendants assert the independent intermediary doctrine bars Plaintiffs' MC2 claims because the grand jury determined that probable cause supported the indictments and arrests of Lee, Ellis, and Counts.  "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."  *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020).  Thus, even an officer who procured an indictment with malice will not be liable "if *the facts* supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury."  *Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988) (internal quotation marks and citations omitted).

"Despite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'"  *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (quoting *Hand*, 838 F.2d at 1428).  The Fifth Circuit has characterized this as "one single,

narrow exception" to the independent intermediary doctrine, "which arises 'when it is obvious that *no* reasonably competent officer would have concluded that a warrant should issue.'" *Hall v. Trochessett*, 105 F.4th 335, 342 (5th Cir. 2024) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012)) (internal quotation marks omitted). "[M]ere allegations of taint, without more, are insufficient to overcome summary judgment." *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation omitted). Rather, the plaintiff must affirmatively show that the defendants tainted the intermediary's decision. *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 555–56 (5th Cir. 2016). For example, to establish taint, a plaintiff could show that the evidence presented to the grand jury was improperly presented, or that the evidence could have misled jurors in making an objective judgment. *See Craig v. Dall. Area RTA*, 504 F. App'x 328, 332–33 (5th Cir. 2012). In addition, to satisfy the taint exception, "omissions of exculpatory information must be knowing." *Buehler*, 824 F.3d at 555 (cleaned up) (citing *Cuadra*, 626 F.3d at 813–14).

Here, Sharp and Lively presented the facts underlying the MC2 charges to the grand jury, which returned a true bill on the indictments against Lee, Ellis, and Counts. Plaintiffs contend that the independent intermediary doctrine does not apply. The Court disagrees.

In contending that the independent intermediary doctrine does not apply, Plaintiffs primarily point to the summary judgment record to argue that there was no probable cause to support the MC2 charges. Specifically, Plaintiffs contend that the definition of "abuse" under Texas Family Code § 261.101(1)(C), the statute relevant here, specifically excludes "an accident," and that the record creates a question of fact as to whether the student who swung the bat did so intentionally, thus raising a fact question as to whether there was probable cause to

21

arrest Lee, Ellis, and Counts for failing to report the classroom incident as "abuse," as defined under the statute.  *See* ECF No. 141 at 20–23; P. App. 632–34, 642–44.

However, the question before the Court is not whether there was, in fact, probable cause to charge Plaintiffs, but instead whether Defendants deliberately tainted the grand jury's deliberations.  Thus, the proper inquiry is whether the facts supporting the arrest were properly placed before the grand jury, or whether the grand jury was misled to such a degree that no reasonable officer would have concluded that an arrest warrant should issue.  *See Hall*, 105 F.4th at 342.

To this Court's knowledge, there is not a transcript of the presentation of the MC2 charges to the grand jury.  Only the PowerPoint presentations that Sharp and Lively presented to the grand jury are part of the summary judgment record.  D. App. 99–139.  Based on the Court's review of those, these presentations appear to contain a generally thorough presentation of facts relating to the incident, including witness statements and interview summaries.  For instance, the presentation includes:

- A recitation of a November 16, 2021, meeting between Ellis and the injured student's parents, in which "Mrs. Ellis said that the little boy and [the injured student] both said that it was an accident and so she was not going to do anything else about it."  D. App. 123, 126.

- A description of a December 2, 2021, call between Lee and the injured student's parents, stating "Lee questioned other students, and all said [the injured student] walked into the bat" and "Investigation – ALL agreed [the injured student] walked into the bat."  D. App. 127.

- A description of a March 8, 2022, interview with the injured student, stating:

    o "As he is about to sit down at his desk, [the injured student] is hit with the bat. [The injured student] stated he blacked out and attempted to feel around to find his desk."  D. App. 131.

    o "Student [REDACTED] who hit him with the bat[] walked off and handed the bat to another student.  [The injured student] heard [the perpetrator] say that he hit him with the baseball bat but didn't even hit him that hard."  D. App. 132

- o "[The injured student] overheard Ms. Lott [the teacher in the classroom] say the student had the bat over his shoulder and [the injured student] walked into the bat. [The injured student] shook his head no and told Ms. Lott that was not true." D. App. 133.

- A description of a June 23, 2022, interview with Ms. Lott, the teacher in the classroom when the incident took place, stating "[The perpetrator] said [the injured student] got hit in the head with a baseball bat, but he didn't do it on purpose. Lott stated she was chewing him out about swinging the baseball bat in the classroom." D. App. 138.

Regarding the law, the presentation included a recitation of the relevant statute, including the definition of "abuse" and the fact that "an accident" is excluded from the definition of reportable abuse under Texas Family Code § 261.001(1)(C). D. App. 100. The presentation also included a discussion that touches on the same arguments Plaintiffs make now, namely that the "Defense first relies on the fact that this is entirely an accident and is excluded from abuse." D. App. 109. The presentation correctly stated that the statute does not define the word "accident," and provided two definitions from the Internet. D. App. 109–10. In doing so, the presentation conceded that one definition of "accident" is "helpful to [the] defense" and "the other more helpful to us," before providing the prosecutor's position: "this is not an accident because a person is swinging a bat in a classroom full of students." D. App. 112.

Plaintiffs identify no fault or error with the facts presented to the grand jury, nor do they point to anything in the PowerPoint that they contend is misleading or misrepresents the evidence.[4] Nor have Plaintiffs established that no reasonably competent officer would have concluded that an arrest warrant should issue based on these facts. *See Hall*, 105 F.4th at 342 ("This single and narrow exception is a high bar. Meeting this bar is difficult, and there is nothing here showing that no reasonably competent officer would have concluded that a warrant should issue.").

---

[4] Although the presentation referenced the wrong school district, that is not a material fact.

Instead, the grand jury presentation reveals that Lively argued that because the perpetrator appears to have deliberately swung a bat in a classroom of students, the incident did not qualify as an accident so as to be excluded from the definition of "abuse" under the statute. *See* D. App. 110 (defining accident as "[a]n event that happens by chance or that is without apparent or <u>deliberate</u> cause" (emphasis in original)).  Plaintiffs do not explain why, given the lack of a definition of "accident" in the statute, this is an unreasonable position for Lively to have taken.  There is no genuine fact question regarding whether the grand jury's deliberations were tainted.

Plaintiffs' remaining arguments do not warrant a different result.  The Court has already sustained some of Plaintiffs' objections regarding certain declarations cited by Defendants in support of Defendants' Motion for Summary Judgment, and the Court has not relied on those stricken portions in reaching this decision.  Plaintiffs also point out that the grand jury no-billed reckless assault charges against the student who swung the bat, as evidence that the MC2 failure-to-report charges against Plaintiffs were unreasonable, but do not explain how the decision to no-bill the perpetrating student taints the grand jury's earlier deliberations regarding Plaintiffs.  *See, e.g.*, *Hall*, 105 F.4th at 342 ("A defense that may be raised in future proceedings does not vitiate probable cause at the time of arrest.").  Finally, Plaintiffs point to portions of Sharp's deposition testimony, in which she appears to concede that she lacked probable cause to arrest the Plaintiffs. P. App. 632–33, 643–44.  However, the Fifth Circuit has noted the "clear" precedent that "an arresting officer's state of mind . . . is irrelevant to the existence of probable cause," and thus Sharp's testimony does not compel a different outcome.  *See Hall*, 105 F.4th at 341.

For the foregoing reasons, the Court concludes that the independent intermediary doctrine applies, and as a result, probable cause exists in support of the MC2 arrests.

### 2.   MC2 - False Arrest (Fourth and Fourteenth Amendments)

Alonzo and Sharp move for summary judgment on the § 1983 claim for false arrest

asserted by Lee, Ellis, and Counts in connection with MC2, based on violations of the Fourth and

Fourteenth Amendments.  "Under the prevailing view in this country a peace officer who arrests

someone with probable cause is not liable for false arrest [even if] the innocence of the suspect is

later proved."  *Hall*, 105 F.4th at 341 (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967))

(alteration in original).  Because the MC2 arrests of Lee, Ellis, and Counts were supported by

probable cause, their claims for false arrest are foreclosed, and summary judgment is appropriate

on this claim.

### 3.   MC2 - Initiation of Criminal Charges without Probable Cause (Fourth and Fourteenth Amendments)

Alonzo and Sharp move for summary judgment on the § 1983 claims of Lee, Ellis, and

Counts over the initiation of criminal charges without probable cause arising out of MC2.  As

discussed previously, a necessary element of a malicious prosecution claim is the absence of

probable cause for such a proceeding.  *See Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he

gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful

initiation of charges without probable cause."); *Armstrong*, 60 F.4th at 279 n.15 ("Because an

unlawful seizure is the threshold element, if the prosecution is supported by probable

cause . . . then a malicious prosecution claim cannot move forward.").  Thus, because the grand

jury found probable cause to initiate the MC2 charges, summary judgment on this claim is

appropriate.

### 4.   MC2 - Retaliation by Filing of Criminal Charges without Probable Cause (First, Fourth, and Fourteenth Amendments)

Lee, Ellis, and Counts assert a § 1983 claim against Alonzo and Sharp for knowingly or

recklessly initiating a criminal proceeding over MC2 without probable cause and as retribution

25

for the filing of their civil MC1 claims in this lawsuit, in violation of the First, Fourth, and Fourteenth Amendments. The Supreme Court has held that the lack of probable cause is a prerequisite for bringing a retaliatory prosecution and retaliatory arrest claim under the First Amendment. *Hartman v. Moore*, 547 U.S. 250, 266, (2006) (holding that "showing an absence of probable cause" must be "pleaded and proven" to prevail on a claim of retaliatory prosecution); *see also Nieves v. Bartlett*, 587 U.S. 391, 406 (2019) (following *Hartman* to hold that "probable cause should generally defeat a retaliatory arrest claim").

Despite the presence of probable cause for the MC2 claims, Plaintiffs urge the Court to apply a narrow exception recognized by the Supreme Court in *Nieves* in the context of retaliatory arrests. Specifically, the Supreme Court held that "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407. For support, Plaintiffs point to the teacher in the classroom, the MCS school nurse, and the emergency room doctor, as individuals who had a statutory duty to report suspected child abuse, were aware of the MC2 circumstances involving the injured student, did not report it to the authorities, but were not arrested.

*Nieves* involved a warrantless arrest, and the Supreme Court limited the exception articulated therein for "circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. For example, the Supreme Court observed that jaywalking may be frequent at certain intersections but rarely results in an arrest, but "[i]f an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted

probable cause for the arrest." *Id.* at 407. Thus, the Supreme Court held that the no-probable-cause requirement articulated in *Hartman* should not apply when a plaintiff presents objective evidence that he was arrested when similarly situated individuals not engaged in the same sort of protected speech were not. *Id.*

The Court concludes that the exception articulated in *Nieves* does not apply here. MC2 did not involve a warrantless arrest, but instead the presentation of charges to a grand jury. Put differently, Plaintiffs' claims stem primarily from the decision to bring the MC2 charges to the grand jury in the first place, not from the arrest decision. In that sense, the issue presented here resembles *Hartman* more than *Nieves*. An absence of probable cause is necessary "to suspend the presumption of regularity behind the charging decision." *Hartman*, 547 U.S. at 264.

Here, the Court's conclusion regarding the actions of the grand jury and the existence of probable cause for the MC2 charges is dispositive, and summary judgment for Defendants is appropriate on this claim.

### 5. MC2 – Municipal Liability

The City of Midland seeks summary judgment on the claims of Lee, Ellis, and Counts for municipal liability under *Monell*. *Monell* provides that a municipality can be liable under § 1983 when the violation of the plaintiff's federal rights is attributable to a municipal policy or practice. 436 U.S. at 691. To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017).

The Court previously dismissed Plaintiffs' claims against the City of Midland based on MC1, and thus the only remaining avenue for *Monell* liability is via MC2. However, the Court

has concluded that summary judgment is appropriate for Defendants on all of Plaintiffs' MC2

claims. As a result, there has been no constitutional violation based on MC2, and therefore no

associated municipal liability. Summary judgment is appropriate on all claims against the City

of Midland.

### C. Qualified Immunity

Defendants move for summary judgment on the grounds that the individual Officer

Defendants are entitled to qualified immunity. "As a general rule, government officials

performing discretionary functions are entitled to qualified immunity." *Morris v. Dearborne*,

181 F.3d 657, 665 (5th Cir. 1999). Once qualified immunity is asserted, the Plaintiff carries the

burden to establish facts to show "(1) that the official violated a statutory or constitutional right,

and (2) that the right was 'clearly established' at the time of the challenged conduct." *Morgan v.

Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Each individual's entitlement to qualified

immunity is considered separately. *Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007).

The Court has already granted summary judgment for Fonseca and for Defendants as to

Plaintiffs' MC2 claims, and has determined that there are fact questions as to whether Alonzo

and Sharp violated Plaintiffs' constitutional rights in connection with MC1. In light of these

rulings, the qualified immunity inquiry is limited to whether Plaintiffs' claimed constitutional

rights were clearly established at the time of MC1.

A right is clearly established when, at the time of the challenged conduct, the contours of

the right are sufficiently clear such that every "reasonable official would have understood that

what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Conversely, an official's conduct does not

violate clearly established law if a reasonable official could have believed his conduct was

lawful. *Anderson*, 483 U.S. at 641. The key question is whether the state of the law at the time gave the official "fair warning" that his act was unconstitutional. *Morgan*, 659 F.3d at 372. A court must ask "not only whether courts have recognized the *existence* of a particular constitutional right, but also . . . whether that right has been defined with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct." *Id*. (internal quotation marks and citations omitted).

Plaintiffs' remaining claims against Alonzo and Sharp are for false arrest and malicious prosecution, which are both premised on a *Franks* violation. As explained by the Fifth Circuit, "an officer who recklessly or intentionally contributed misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights," and "[t]hat violation has been clearly established since *Franks*." *Hughes*, 100 F.4th at 620. The *Franks* decision issued in 1978, and thus in February 2022 when the arrests took place, the "right to be free from police arrest without a good faith showing of probable cause" was clearly established. *Winfrey*, 901 F.3d at 494. The Court has already determined that there are fact questions as to whether both Alonzo and Sharp acted intentionally or with reckless disregard for the truth when preparing and reviewing the arrest warrants and affidavits, and whether a "corrected affidavit" would have satisfied probable cause.[5] Thus, Plaintiffs have satisfied their burden of showing that there is an issue of material fact as to whether Alonzo and Sharp violated their clearly established rights, and Plaintiffs are thus entitled to present their case to the factfinder.

## IV.    Conclusion

Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiffs' claims against Fonseca, Plaintiffs' claim for false arrest based on violations of the Fourteenth

---

[5] Officer Fonseca's role in the preparation and submittal of the affidavits was a rapid clerical review (P. App. 1238), and his knowledge of the facts relating to the incident was too limited to subject him to liability for their content.

Amendment based on MC1, and all claims based on MC2.  Plaintiffs' Motion to Strike is

**GRANTED IN PART.**  The remainder of Defendants' and Plaintiffs' Motions are **DENIED.**


      **SO ORDERED**.

July 25, 2025.

                    BARBARA M. G. LYNN
                    SENIOR UNITED STATES DISTRICT JUDGE
                    NORTHERN DISTRICT